```
1        IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
2                  NORTHERN DIVISION

3   UNITED STATES OF AMERICA     )
         Plaintiff,              )CRIMINAL NO
4        vs.                     )1:21-cr-00116-RDB
    DESMOND BABLOO SINGH         )
5        Defendant.              )Baltimore, Maryland
    _____  )May 13, 2021
6                                 11:05 a.m.

7


8          THE ABOVE-ENTITLED MATTER CAME ON FOR
                    DETENTION HEARING
9          BEFORE THE HONORABLE RICHARD D. BENNETT

10                 A P P E A R A N C E S

11  On Behalf of the Plaintiff:

12       PATRICK A. MULLIN, ESQUIRE
         ISABELLE R. RAQUIN, ESQUIRE
13
    On Behalf of the Defendant:
14
         ZACHARY A. MYERS, ESQUIRE
15
    Also Present:
16
    Special Agent William Jones, Homeland Security Investigations
17  (via telephone)

18  Nikki Martin, Probation
    Mr. and Mrs. Singh
19

20

21

22

23                    Reported by:

24          Ronda J. Thomas, RPR, CRR
             Federal Official Reporter
25       101 W. Lombard Street, 4th Floor
            Baltimore, Maryland 21201
```

<u>P R O C E E D I N G S</u>

**THE COURT:** This is calling the matter of United States v. Desmond Babloo Singh. Criminal Number RDB-21-0116.

We are here this morning for an initial appearance with respect to the indictment returned against the Defendant as well as a detention hearing pursuant to 18 United States Code § 3142 and specifically a -- essentially a motion for release pending trial.

If counsel will identify themselves for the record, please.

You in the back may be seated. Thank you.

If counsel will identify themselves, please.

**MR. MYERS:** Assistant United States Attorney Zachary Myers here on behalf of the United States and joined by phone on the public access line by Special Agent Jones of Homeland Security Investigation.

**THE COURT:** Nice to see you, Mr. Myers. I haven't seen you for a while. It's nice to see you in person.

**MR. MYERS:** You as well, Your Honor.

**THE COURT:** Who is the case agent on this case?

**MR. MYERS:** William Jones, Your Honor, of Homeland Security Investigations.

**THE COURT:** And Agent Jones is on the telephone?

**MR. MYERS:** He's on the public access line.

**THE COURT:** Good morning to you, Agent Jones, as well.

1          Then on behalf of the Defendant?

2          **MR. MULLIN:**  Your Honor, Patrick Mullin appearing on

3    behalf of Mr. Singh.

4          **MS. RAQUIN:**  Good morning, Your Honor.  Isabelle

5    Raquin on behalf of Mr. Singh as well.

6          **THE COURT:**  Yes, nice to have both of you here as

7    well.

8          Ms. Raquin, I think you've appeared before me before.

9    Nice to have you back.  Welcome back.  It's nice to see you.

10         Mr. Mullin, welcome to you, sir.  It's nice to see

11   you.  You're down here from New York, I believe?

12         **MR. MULLIN:**  New York City.  That is right.

13         **THE COURT:**  It's nice to have you here.

14         And last, but not least, good morning to you,

15   Mr. Singh.

16         **THE DEFENDANT:**  Good morning, Your Honor.

17         **THE COURT:**  You all may be seated for a moment here.

18   Let me just go over where we are on this matter.  Again, keep

19   your voices up.  I have found, quite frankly, Counsel, I have

20   to pull my mask down when I speak because people have

21   difficulty hearing.

22         The Defendant has first of all been indicted by way of

23   an indictment in a four-count -- if I'm not mistaken -- it's a

24   four-count indictment in this case, correct, Mr. Myers?

25         **MR. MYERS:**  That is correct, Your Honor.

1    **THE COURT:**  If you'll please stand, Mr. Singh, because

2    I need to go over with you or you have not had an initial

3    appearance according to my review of the docket I don't

4    believe, Mr. Myers.  He has not yet had a initial appearance on

5    this and so I want to go over, first of all, Rule 5 of the

6    Federal Rules of Criminal Procedure, the matter of your initial

7    appearance here on this.

8         I know you had an appearance on the complaint, but let

9    me just go over first of all the nature of the charges here in

10   the indictment.  I'm sure Mr. Mullin and Ms. Raquin --

11   Ms. Raquin, am I pronouncing your name correctly?

12        **MS. RAQUIN:**  As best as anyone does, Your Honor, yes.

13        **THE COURT:**  I'm sorry?

14        **MS. RAQUIN:**  As best as anyone does.

15        **THE COURT:**  Well, that's very nice.  Thank you very

16   much.  My high school French is paying off then.  Raquin.

17        But let me just go over this with you here, Mr. Singh.

18   Am I pronouncing your name correctly, sir?

19        **THE DEFENDANT:**  Yes, Your Honor.

20        **THE COURT:**  Essentially you've been charged in a

21   four-count indictment first of all with cyberstalking in

22   violation of 18 United States Code § 2261A(2) as well as

23   aggravated identity theft in violation of 18 United States Code

24   § 1028A.

25        And essentially it's charged that there is a victim,

female, identified as victim one here, who's a resident of Maryland who allegedly became a primary target of a month-long cyberstalking and harassment campaign allegedly carried out by you.

Then there is a victim two who is a male acquaintance of victim one, also a resident of Maryland, who it is alleged also became a target of your cyberstalking and harassment.

It is charged from approximately 2013 to 2014 when victim one was a middle school student here in Maryland that she was a friend of your older sister and then at the end of your school year your family relocated to Texas.  And it is alleged that beginning -- that you maintained some contact with her and had some online or text message conversations going into November and December of 2019.

But then in Count I it is alleged that on or about Valentine's Day, February 14, 2020, you shared with the victim one a private Instagram story in which you unequivocally professed your love for her and provided online links, and it is alleged that victim one rejected your romantic advances and asked you not to contact her any further.

And it is alleged that over the course of the next 10 months starting in February of last year, February of 2020, that you orchestrated and carried out a relentless cyberstalking and harassment campaign against her.  Also did the same as to victim two, her male associate or male friend,

who it is alleged you apparently perceived as a romantic rival.

Then it is specifically alleged that beginning on or about April of 2020, and continuing through at least November 24, 2020, that you used more than 100 different social media, electronic communication, and phone accounts to send victim one harassing communications. And it is alleged that these communications included public posts, private social messages, text messages and other online postings.

And it is alleged that you actually used images of victim one No. 1 in the harassing communications in which you -- it is alleged you denigrated her character and appearance.

And it is alleged that this -- this conduct proceeded through into July of 2020. And it is alleged that victim one pleaded with you and your family members to put an end to this harassment campaign but to no avail allegedly. And that victim one even has alleged that you -- she was going to seek a no contact order if you continued to harass her.

It is alleged that on or about June 2 of 2020, that in some type of social posting or communication that you alleged that you're never going to stop, it's going to be funny, and allegedly made other profane comments directed at her.

And then on or about -- it is alleged on or about July 19, 2020, that victim one received an Instagram follow request from one of the accounts that you created.

And it's further alleged that on or about July 20, 2020, victim one's parents' residence was the target of a swatting attack.  Meaning that someone contacted law enforcement to falsely report an emergency at the residence and specifically a Baltimore County, Maryland, employee received an anonymous email telling law enforcement to investigate ASAP a possible bomb at victim one's parents' home.

Law enforcement officers responded to the home but subsequently determined that the whole thing was a hoax.

Then it is alleged that on or about July 21, 2020, that you texted victim one from an anonymous number and writing quote, "You're getting swatted," end of quote.

It is further alleged that this harassment campaign involved gaining unauthorized access to victim one's social media accounts.  And specifically it is alleged that on or about July 19, 2020, that you gained unauthorized access to victim one's Snapchat account and changed the email address associated with the account to an email account created and controlled by you.

As a result of this, these alleged activities, it is alleged that you obtained personal images of victim one that had been stored in her account, and that you subsequently shared these images of victim one online in the harassing accounts you created.

And then it is alleged, going up again to the period

of November of 2020, that you gained unauthorized access to her

TikTak account and changed the email address associated with

that.

It is also alleged that your cyberstalking and

harassment campaign also targeted victim number two, the male

associate of victim one, and created numerous social media

accounts intending to harass and intimidate victim number two

as well.

The course of this conduct has also allegedly included

your targeting victim number two and threats to seek out and

fight him.  Your threats of violence against victim number two

allegedly also extended to postings you made on other social

media accounts.

Furthermore, it is noted that on or about April 18,

2020 to November 24, 2020, as well as in Count II from May 9,

2020 to November 8, 2020, directed first at victim one and

second at victim number two, that you -- in the District of

Maryland and the Southern and Eastern District of New York and

elsewhere that you, with the intent to kill, injure, harass,

intimidate and place under surveillance with intent to kill,

injure, harass and intimidate victim one and two used an

interactive computer service, electronic communication service

and electronic communication system of interstate commerce, or

any other facility of interstate or foreign commerce, to engage

in a course of conduct that placed Victims 1 and 2 in

reasonable fear of death or serious bodily injury.

They are essentially the charges in Counts I and II charging you with cyberstalking which is a violation of federal law. The charge summarizes a violation of federal law under 18 United States Code § 2261A(2).

Counts III and IV charge you with aggravated identity theft. First as to Count III with victim one and secondly as to Count IV with victim one. Count III relating to the Snapchat account and Count IV relating to the TikTak account.

And it is suspiciously alleged that -- specifically alleged that you did transfer, possess and use, or attempt to transfer without lawful authority, a means of identification of another person in that you possessed and used the electronic account credentials of victim one without lawful authority during and in relation to wire fraud in violation of 18 United States Code § 1343; and that would be in violation of 18 United States Code § 1028A in terms of aggravated identity theft.

Do you understand the nature of the charges against you, Mr. Singh?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** I want to make sure you understand you have a right to employ counsel of your own choosing, which you have, you retained Mr. Mullin and Ms. Raquin. Ms. Raquin is a member of this court, and Mr. Mullin has certainly been accorded *pro hac vice* admission, and he's entitled to be here.

You've retained your private counsel.

I want to make sure you understand if you could not afford to employ counsel court-appointed counsel could be appointed to represent you.

Do you understand that?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  And you have a right to a preliminary hearing or in this case there's already been a contention of probable cause by way of the grand jury indictment.  And you have a right to seek -- to secure pretrial release.  You're not required to make any statement.  And if you start to make a statement you may stop at any time under the auspices of the opinion of the United States Supreme Court in *Miranda v. Arizona*.  That being said, any statement that you make may be used against you pursuant to Rule 5(d)(1) of the Federal Rules of Criminal Procedure.

I would gather that you definitely had an opportunity to consult with counsel on this matter and indeed your retained counsel has requested this detention hearing, and we're going to be having that in a few moments.

So with that I think we've conducted the initial appearance here.  At the initial appearance there's a formal entry of a plea of not guilty at this time, correct, Mr. Mullin?

**MR. MULLIN:**  That is correct, Judge.

1          **THE COURT:**  Your plea is not guilty to all four

2     counts, correct, Mr. Singh?

3          **THE DEFENDANT:**  Yes, Your Honor.

4          **THE COURT:**  That will be recorded, Madam clerk.  We've

5     conducted an initial appearance and a plea of not guilty filed

6     by the Defendant.

7          So with that we'll now proceed here -- you'll be able

8     to sit down in a minute, Mr. Singh, but we'll now proceed to

9     the procedural history of this case.

10          There was a sealed complaint filed against you on

11    December the 22nd of this year here in this court and that gave

12    rise ultimately to your arrest on December the 22nd in New York

13    City.  And there was an initial appearance on the complaint,

14    not on the indictment that I've just conducted, by United

15    States Magistrate Judge Barbara Moses in the United States

16    District Court for the Southern District of New York, in which

17    she had ordered your release and setting a number of

18    conditions.

19          The Government filed an emergency motion for

20    revocation of that release order on December the 28th, and a

21    hearing on the emergency motion was conducted before me on

22    December the 28th, and I granted that motion pursuant to 18

23    United States Code § 3145.

24          I conducted a hearing on that and for the reasons set

25    forth on the record, and after considering the factors under 18

United States Code § 3142 during my *de novo* review, I
determined that you would be remanded to the U.S. marshals and
would remain in detention.  So you have been -- you have been
in federal detention since December 22 of 2020.

In the interim period the grand jury returned that
indictment I've just summarized for you on April 21 of this
year, and so that we are here for a detention hearing pursuant
to the Bail Reform Act of 1984, and we will be conducting that
hearing in a few minutes here under § 3142 of Title 18.

Have I correctly summarized the procedural posture
from your point of view, Mr. Myers?

**MR. MYERS:**  Yes, Your Honor.

**THE COURT:**  Mr. Mullin, from your point of view?

**MR. MULLIN:**  Yes, Your Honor.

**THE COURT:**  So with that we're ready to proceed.  Let
me just clarify if I can.  Given the nature of these offenses,
Mr. Myers, we are not in the category of a rebuttable
presumption here.  The burden of proof is borne by the
government by a preponderance of the evidence, correct?

There is no rebuttable presumption that's created here
given the nature of these charges.

**MR. MYERS:**  That's correct, Your Honor.

**THE COURT:**  I know that I've read Mr. Mullin's
memorandum Paper Number 16 that was filed on April the 23rd,
and I certainly read your emergency motion, I'm very familiar

1  with that.  The Government has never really responded by

2  memorandum as to Mr. Mullin's memorandum; is that correct,

3  Mr. Myers?

4      **MR. MYERS:**  Yes, Your Honor.  My apologies if I missed

5  it on the docket, but I'm actually not aware of Mr. Mullin's

6  memorandum.

7      **THE COURT:**  Yes.  There was Paper Number 16 filed on

8  April the 23rd, and it is a Motion For Release Pending Trial

9  and a Memorandum Of Law In Support Of The Defendant's Motion

10  For Release Pending Trial, and it is Paper Number 16.  Correct,

11  Madam Clark, if you see it there.

12      **THE CLERK:**  Yes.

13      **THE COURT:**  Ms. Carter can print a copy if you would

14  like.  And it was filed on April the 23rd.

15      Correct from your point of view, Mr. Mullin?

16      **MR. MULLIN:**  It is correct, Judge.  I can certainly

17  provide --

18      **THE COURT:**  Well, Ms. Carter can print it up very

19  quickly.

20      **MR. MULLIN:**  Oh, good.

21      **THE COURT:**  It's a nine-page memorandum and it also

22  contains a report from an investigation company retained by

23  Mr. Mullin on behalf of his client with a personal history and

24  bond report for Mr. Singh that's attached.  There's an 11-page

25  report attached as well.

1    **MR. MYERS:**  My apologies, Your Honor.  If the Court

2    would give me a brief --

3        **THE COURT:**  Take your time.  I meant to note here,

4    over on the right, I didn't realize Ms. Nikki Martin is here.

5    Nice to see you.

6        **MS. MARTIN:**  Good morning, Your Honor.

7        **THE COURT:**  You have a copy of what was filed by the

8    Defendant, do you not?

9        **MS. MARTIN:**  Do you want me to give him mine?

10       **THE COURT:**  You can keep your own copy.  Ms. Carter

11   will print it out.  She's capable to print out the nine-page

12   motion and the 11-page attachment.  We'll do that for you right

13   now, Mr. Myers.

14       **MR. MYERS:**  Thank you, Your Honor.

15       **THE COURT:**  All right.  Mr. Singh, you may be seated

16   now.  You all may be seated for a second because I'm going to

17   hear from the Government first.

18       First step is I'm just trying to confirm that from my

19   review the nature of these charges are not within the category

20   of those that create a rebuttable presumption.

21       **MR. MYERS:**  That's correct, Your Honor.  Neither of

22   the charged statutes carries a rebuttable presumption.

23       **THE COURT:**  Again, under the Bail Reform Act the

24   Government may move for a Defendant's pretrial detention if the

25   case involves among other things an offense for which a maximum

term of imprisonment of 10 years or more is prescribed. And the presumption of detention places a limited burden of production, not a burden of persuasion, on the Defendant to come forward with evidence that he does not pose a danger to the community or risk of flight and that is in connection with certain enumerated offenses, but they are not applicable here, at least it doesn't appear.

I'm just trying to note that -- essentially under § 3142(e)(3) subject to rebuttal it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person is required and the safety of the community with respect to certain enumerated offenses, including for example a 924(c) charge with respect to use of a firearm in furtherance of a crime of violence.

But I don't think that's -- you may take that. Thank you very much, Ms. Carter.

**THE CLERK:** You're welcome, Judge.

**THE COURT:** -- that does not apply here. I'm just trying to verify that the -- there is no rebuttable presumption so we start sort of fresh at the gate here in terms of the Government providing by a preponderance of the evidence the matter of risk of flight or threat to the community.

You want to take a few minutes and review what they have submitted, Mr. Myers?

**MR. MYERS:** If the court doesn't mind, I would

1  appreciate that, Your Honor.

2         **THE COURT:**  That's fine.  Why don't we take a very

3  brief -- do you need five minutes?

4         **MR. MYERS:**  That's perfect, Your Honor.

5         **THE COURT:**  All right.  We'll take a brief recess for

6  five minutes, and I'll be back on the bench in about five

7  minutes.  We'll take a five-minute recess.

8         **THE CLERK:**  All rise.  This court is in recess.

9         (Brief recess.)

10         **THE COURT:**  Mr. Myers, have you had an opportunity to

11  review the memorandum submitted by defense counsel?

12         **MR. MYERS:**  Yes, Your Honor.  Thank you very much.

13         **THE COURT:**  The first question is this is not a matter

14  where there is a rebuttable presumption against the Defendant,

15  correct?

16         **MR. MYERS:**  That is correct, Your Honor.

17         **THE COURT:**  So with that I'll be glad to hear from

18  you.  Let me just go over a little bit more in terms of

19  housekeeping matters.

20         There has not obviously been an arraignment in this

21  matter but as far as I'm concerned we've covered all the bases,

22  and there will be a formal entry plea of not guilty on all four

23  counts.  Is that correct, Mr. Mullin?

24         **MR. MULLIN:**  That is correct, Your Honor.

25         **THE COURT:**  The other housekeeping matter is pursuant

to the Due Process Protections Act passed last October by the U.S. Congress with respect to the Rule 5(f) of the Federal Rules of Criminal Procedure, in all criminal proceedings on the first scheduled court date, when both prosecutor and defense counsel are present, the court shall issue an oral and written order to the prosecution and defense counsel that confirms the disclosure obligations of the prosecution under *Brady v. Maryland*, 373 U.S. 83, a 1963 opinion clearly ordering the United States to adhere to its disclosure obligations.

I'm confident the U.S. Attorney's Office of Maryland does that routinely, but I must now as a matter of law sign this order, and I'll sign this order now to that effect.

Any objection to that, Mr. Myers?

**MR. MYERS:** No, Your Honor. Thank you.

**THE COURT:** It's satisfactory to you, Mr. Mullin?

**MR. MULLIN:** It is, Your Honor, yes.

**THE CLERK:** Madam Clerk, if you will take this and that has been signed.

I'm sorry, I can't hear you?

**THE CLERK:** Would you like me to formally arraign the Defendant on the record?

**THE COURT:** Okay, yeah. If you want to do that. We'll formally arraign the Defendant on the record and that will be reflected as well. Please stand if you will, Mr. Singh.

1          Thank you, Ms. Carter.

2          **THE CLERK:**  You're welcome, Judge.

3          Mr. Singh, please raise your right hand.

4          (Defendant sworn.)

5          **THE CLERK:**  Please state your full name for the

6    record.

7          **THE DEFENDANT:**  Desmond Babloo Singh.

8          **THE CLERK:**  Mr. Singh, what is your age?

9          **THE DEFENDANT:**  19.

10         **THE CLERK:**  What is the year of your birth?

11         **THE DEFENDANT:**  2001.

12         **THE CLERK:**  Has a copy of the indictment been provided

13   to you?

14         **THE DEFENDANT:**  Yes.

15         **THE CLERK:**  Have you read the indictment or has the

16   substance of the charges been explained to you?

17         **THE DEFENDANT:**  Yes.

18         **THE CLERK:**  Do you understand the charges?

19         **THE DEFENDANT:**  Yes.

20         **THE CLERK:**  Mr. Mullin and Ms. Raquin, are you

21   satisfied that the Defendant understands the charges placed

22   against him?

23         **MR. MULLIN:**  Your Honor, just so it's clear, Your

24   Honor, I have gone over this indictment with my client numerous

25   times.  We've gone over not only the charges in there but the

potential penalties as recently as an hour ago in lockup so the
answer to that question is definitely yes.

    **THE COURT:** Okay.

    **THE CLERK:** Thank you. Mr. Singh, you have been
charged in Counts I, II, III and IV of the indictment. What is
your plea?

    **THE DEFENDANT:** Not guilty.

    **THE CLERK:** Your plea is not guilty to Counts I, II,
III and IV of the indictment; is that correct?

    **THE DEFENDANT:** Yes.

    **THE CLERK:** Thank you.

    **THE COURT:** All right. Thank you very much,
Ms. Carter. Thank you for reminding me to cross T's and dot
I's on that. Defense counsel can be seated and with that I
think we are ready to proceed.

    Essentially the Government is before this court with
respect to the matter of the continued detention of this
Defendant. And we have summarized the procedural history and
with respect to the procedures under the Bail Reform Act the
Government bears the burden of proving by a preponderance of
the evidence that no condition or combination of conditions
will reasonably assure the Defendant's appearance and by clear
and convincing evidence that no condition will assure the
safety of the community.

    So with that there's certain factors that I must

consider and I will under § 3142(g) of Title 18 and as to that now I'm glad to hear from you, Mr. Myers, on this.

**MR. MYERS:** Thank you, Your Honor. As the court is aware, your review here is *de novo*.

**THE COURT:** Yes, yes.

**MR. MYERS:** The Government is seeking detention on the basis both of risk of nonappearance as well as the danger to the community and specifically to the victims.

In terms of the risk of nonappearance, the Defendant has lived -- the Government understands that the Defendant is a 19-year-old college student and has lived in a number of different apartments recently in New York and no longer lives in Texas where he would be seeking to reside.

The Government's concern in terms of nonappearance is, frankly, given the weight of the evidence and the seriousness of the potential penalty, including Counts III and IV which include mandatory terms of incarceration, that those provide incentive for the Defendant to not appear as required. But the bulk of the Government's argument here, and I think sort of the core issue is here, is the danger posed by the Defendant's release.

The Defendant here has committed -- although it's charged as four counts -- has committed months and months of hundreds of different overt acts and instances of felony federal criminal offenses. And much of this was committed as

the court saw after the victim begged him to stop, after the

police responded to his parents' house and told him to stop,

after both victim one and victim number two, listed in the

indictment, contacted the Defendant's family, both his mother

and his sister, and begged them to beg him to stop.  Even after

law enforcement got involved, the Defendant continued.

I think it's important to note, you know, that he

followed through with what he said.  He told the victim early

on in these months of persistent pattern of behavior that he is

genuinely never going to stop that when asked "Please stop

this." "I'm going to get a no contact order."  And it took

months of harassment before she even decided she had to go to

the authorities and that really -- the first time she went to

the authorities was only after the swatting attack.

Now, the court should know that the swatting attack --

the Government's further investigation has determined that the

email sent to provoke the law enforcement response to the

victim's house was sent not by the Defendant but by a

co-conspirator of the Defendant.  And that the messaging shown

on the Defendant's phone shows that there was a discussion of

the Defendant paying that individual, who's been identified as

a juvenile in the State of Illinois.  And a couple of weeks ago

after the return of indictment law enforcement officers issued

a search warrant -- or excuse me -- executed a search warrant

issued by the local court in Illinois at the home of the

juvenile and seized devices as part of the investigation which we're still in the process of reviewing.

However, in review of Mr. Singh's devices, as well as the information from the electronic service providers and from the agencies that received the swatting email, it all lines up with what is on his phone which is that just like in the mini public posts that he made encouraging others to harass her, to swat her, to tell her she's ugly, to call her racial slurs, to send people to her house, that he had specific one-on-one communications with someone else who then did that.

And immediately after the swatting, the following day -- and this was all found on his phone but also the account is linked to one of his emails -- he said "You're getting swatted."

The Defendant -- and also, you know, the Court saw in the complaint that the victim obtained telegram chat messages where someone using the screen name Desmond is seeking someone in exchange for bitcoin to decapitate and rape and murder the victim. And in a chatroom on the internet who knows, you know, how serious that is. That telegram is a platform that we're not able to execute search warrants on. There's evidence on the Defendant's phone that he used telegram.

But I think that in the context -- even though it's not charged, and we didn't bring the murder for hire charge in the indictment -- in the context of all of the other behavior

that the Defendant engaged in and the fact that that chat and

that conduct, you know, lines up with what the Defendant had

been doing for months, I think that that should still go into

the court's calculus, because whether it was him or someone

acting on his behalf, the Defendant's relentless attacking of

these victims on line spurred people to the point where they're

talking about having them killed for money -- having her killed

for money.

But the hacking of her accounts and sharing of her

personal images, not just with the world at large in the number

of these harassing posts that he made, but those images were

sent directly to the victim's families as a means of

embarrassing and harassing her.

I think that just the scope of all of the different

accounts that he was using, all of the different ways that he

found to make her life hell, even going so far as to include in

his campaign of cyberstalking the high school ex-boyfriend of

this victim.  Who I think it's important in the context of this

to bear out, and I think in terms of the danger that the

Defendant -- whether it's his mental condition -- poses is he

doesn't know this girl.  This girl has never met him in person.

This is the middle school friend of his older sister who made

the mistake now, that I'm sure she wishes she could take back,

of accepting a friend request online, and it spiraled into

this.  And the court has seen copies of the messages that he

sent her professing his love, talking about sending gifts, and the rejection of that after months of obsession as set forth in the Government's emergency motion.

When we reviewed the Defendant's phone we found that he was drafting that message carefully for months trying to come up with just the right words to say to this girl he never met. You know, in his mind he clearly was in love with.

After months of that sort of obsession, the rejection apparently just drove him off the edge. And I don't know if there's some underlying condition related to that. If it's just, you know, bad decision-making and bad anger control. But the result was that the Defendant felt entitled to take all of these actions to make her life worse, and it wasn't just limited to what he did online.

The evidence has shown through hotel stays and location information on his phone the Defendant at least twice came to Maryland looking to fight victim two in person. He went to the door of and knocked on a residence where victim number two used to live, and then posted the video of it, sent it to him, you know, calling him derogatory names and demanding that he fight him. Demanding that he pull up.

So during the midst of a global pandemic the Defendant, who is an unemployed college student, has the wherewithal to get himself not once but twice from New York to Maryland in furtherance of this campaign of terror against

these two people all because of his hurt feelings over being rejected online.

I think that the Defendant's threats and the fact that they were carried out physically in a number of different ways show that no matter where he is, if he has access to any sort of internet-enabled devices, whether himself or through another, he poses a serious danger not just to the mental and emotional health but to the safety and well-being of both of the victims.

He was so committed to his harassment of these victims that in addition to the two victims that he's alleged to have cyberstalked in the indictment, as part of that two other individuals, a news reporter in Virginia as well as a individual citizen in Connecticut, had their Twitter accounts hacked and used and converted to the Defendant's purposes to post images denigrating victim one, messages denigrating victim one. All so that those people's followers could also see all the things that the Defendant was doing to attack victim one.

So the nature of the risk is real. It is not just theoretical and it's not just online. The Defendant's persistence in his conduct shows how committed he was to it and that the threat of law enforcement involvement, the threat of a protective order, the pleading of the victim to him and to his family, none of that was enough to convince him to stop.

I think in terms of considering the appropriateness of

this solution for pretrial release the Defendant is proposing,

and that I'd note that the probation officer here has found

that there aren't a condition or combination of conditions that

can reasonably assure the safety of the public, that the

Defendant, who clearly has parents who love him and are afraid

for him, his parents in this case under these facts just can't

be the people who the court has to give all of its trust to

that he's going to follow what the court said.

And I know it may have changed now, and she's here

today and she might want to speak or not, but during the

hearing before Judge Moses in New York, the Defendant's mother

made clear that she didn't believe that he could have done any

of these things and that this was all a big misunderstanding

with some girl who he had a bad romantic relationship with.  Of

course there is no relationship.  This is all in the mind of

the Defendant.

But I think that given the telephone that he used to

conduct most of this activity -- is a telephone, you know, like

many college students -- that was subscribed for or paid for

and subscribed by his parents.  And so back at least in June of

2020 his parents knew that the victim was saying that these

things were being done by him and that, you know, his phone was

his means of doing this.  And yet at no time during the course

of any of this did they consider taking his phone away or

cutting off its service.  Even though he was in New York, they

were in control of that.  They could have done that.

And should the Defendant be allowed to return home, the court will just have to trust that in this day and age a 19 year old with motivation can't find a way to get their hands on an internet-enabled device and as soon as that's able to happen he can do any of the things that he has done before.

So I think that the risk to the public, the risk to the victims, I think is, you know, significantly outweighs whatever protection that an order not to get on the internet might have in this case because of the nature of this offense.

The Government understands the Defendant doesn't have a prior history of criminal convictions.  But I think that engaging in a months' long series of numerous criminal offenses should be considered when considering the history and characteristics of the Defendant.

And I think it's also clear that there's some sort of mental health concern going on here that, you know, would likely make it less likely that he's able to regulate his behavior and conform his conduct to the dictates of the law as well as the dictates of the court's order.

So for all those reasons the Government believes that the Defendant needs to be held in detention pending trial in this matter.

**THE COURT:**  Just so we're clear, Mr. Myers, the thrust of your argument is not so much that no condition will

 1    reasonably ensure his appearance, and it isn't so much that you

 2    view him as a flight risk, but it's that the safety of the

 3    community is involved in terms of the victims and conduct?

 4         **MR. MYERS:**  Yes, Your Honor.  I think the safety is

 5    the much more important consideration.

 6         **THE COURT:**  In terms of your view in terms of the

 7    weight of the evidence in this case?

 8         **MR. MYERS:**  Yes, Your Honor.

 9         **THE COURT:**  Thank you very much.  With that,

10    Mr. Mullin or Ms. Raquin, I'll be glad to hear from you

11    whichever person would like to address the court.

12         **MR. MULLIN:**  Thank you, Judge.

13         **THE COURT:**  Mr. Mullin, I've noticed for some reason

14    your microphone -- you need to pull it closer to you.  I'm

15    picking up Mr. Myers well.  I picked up Mr. Singh very well,

16    but I'm not really picking you up very well.

17         **MR. MULLIN:**  Is that better?

18         **THE COURT:**  I know it's difficult with the mask and

19    everything.

20         **MR. MULLIN:**  It is difficult with the mask.

21         **THE COURT:**  I'll give you a lead.  You can just pull

22    your mask down a little bit if you want.  That's fine.

23         **MR. MULLIN:**  That will be great.  Thank you, Judge.

24         **THE COURT:**  I don't know why that microphone doesn't

25    seem to be as hot as the others, but I'm not picking you up as

well but go ahead.

      **MR. MULLIN:**  Thank you.  Your Honor, since it is clear that my client is not a risk of flight and that he will appear before any proceedings that you have, then I will focus upon the other tier of this analysis which is the danger to the community.

      Your Honor, what we've done is on behalf of Mr. Singh and on behalf of the Court is to hire a former probation officer out of the Eastern District of Virginia, Mr. William Byerley.  And we had Mr. Byerley do an extensive analysis in this matter and following he spoke to my client I believe.  He spoke to the mother, Ms. Singh.  He had an opportunity to review a number of documents.  He's a very, very thorough man. And at the conclusion of which he submitted a report that we have made part of our moving papers as well as incorporating that into our submission to Your Honor.

      And while understanding the Government's concerns based upon whatever information they have, and while not diving too deeply into the pros and cons and rights and wrongs of what they're saying because we have a different view on what is being alleged here, Judge, we have presented to the court a package that we submit gives the greatest assurance that my client will not be a danger to the community while he is out on bail.

      And I have been through this before in another case

where these kinds of restrictions have been placed and my experience is they work.  And what we're suggesting is a number of things here so that Mr. Singh, while he's in the custody of his parents -- by the way, his parents are in this court today.

THE COURT:  Yes, good morning to both of you.  Good morning.

MR. MULLIN:  They have flown in to be with their son and if Your Honor will be allowed to be able to take him and watch him and care for him and make sure that he does what he has to do.

But what we're suggesting to the court is that you allow him to be under house arrest at his parents' home in Texas.  He would wear an electronic bracelet that would be 24/7.  I have a few clients who have those, and they tell me the moment they do something wrong that bracelet goes off right away, okay.  There would be no question about that, number one.

There would be no use of a computer in the house while he's there.  So there's no computer for him to utilize.  That's number two.

Nor would there be any phone that would be there for him to use.  His parents would have full control over the use of the phone.

And the parents have adjusted their work schedules -- they're both hardworking people -- Ms. Singh is a nurse, Mr. Singh is a truck driver -- to make sure that there's always

someone with their son 24/7 to monitor him.

Also, I spoke to a psychologist in Temple, Texas.

THE COURT: Margaret Chandler?

MR. MULLIN: Ms. Singh proposed Chandler. I did my own research. I found a Rebekah Oakley who's a psychologist and whose credentials I thought were up to what we need here.

I called her office. I spoke to Amanda, who is her assistant, and I explained what we have here. She told me that if Mr. Singh is permitted to be released that we would make arrangements for some kind of telemedicine, apparently that's the way it's done with her office, so that he wouldn't have to leave the house, but he would have sessions with her.

THE COURT: Mr. Mullin, if I can, I don't want to interrupt you, and I want to hear more of your plans, but when were his parents aware of this alleged situation?

MR. MULLIN: Judge, I haven't delved into it. My understanding is that these people knew each other. That the Jane Doe here knew the sister --

THE COURT: I understand the allegation is that the victim one is the friend of his older sister.

MR. MULLIN: That's correct.

THE COURT: What I'm trying to determine is that -- up to the time that he was arrested in New York on December the 22nd of last year when did his -- when were his parents aware of this allegedly obsessive conduct and use of the internet and

1  Instagram and texting?  When did they become aware of this

2  alleged obsession?

3          MR. MULLIN:  Judge, if you give me two minutes I can

4  ask them.

5          THE COURT:  I'd like to know.  You can take a break.

6          MR. MULLIN:  Thank you.

7          THE COURT:  Pull your mask up.  If you want you can go

8  back and talk to them for a second if you'd like.  Go right

9  back there in the courtroom.

10         MR. MULLIN:  Ms. Raquin will join me.  Thank you.

11         THE COURT:  Yes, Mr. Mullin.  I'll be happy to hear

12  you.

13         MR. MULLIN:  All right, Judge.  I just spoke to

14  Mr. and Mrs. Singh, it appears that they were advised that

15  there was a complaint made by Jane Doe and -- a couple things.

16         Number one, at the time they had some difficulty

17  getting ahold of their boy.

18         THE COURT:  I'm sorry?

19         MR. MULLIN:  They had some difficulty at that time

20  getting ahold of their boy, number one.

21         THE COURT:  You mean because he was in New York City.

22         MR. MULLIN:  He was in New York City.  It wasn't like

23  he was living in the house in Texas.

24         Second of all, their best recollection is that when

25  they did speak to him they had mentioned to him that there was

a complaint made about what was going on.  Judge, that's the best information I have now.  Again, we haven't delved into this thing.

I can tell you that these folks are committed to make sure -- this guy's been in jail for almost five months.  I get a call from Ms. Singh at least four or five times a week on this.  So she understands and her husband understands the gravity of this.  They understand the seriousness and the responsibility they would be taking on if they became third-party custodians on this thing, Judge.

There's no doubt in my mind that they understand that they would need to be watching that boy 24/7 and that he could do nothing in any way to create a problem.

They've been through -- they've been through hell and over with this.  And they understand that he needs, while this case proceeds, to be on his best, best, best behavior.  And they have assured -- both of them -- husband and wife have assured me that that would be the case.

**THE COURT:**  I think I owe it to you, Mr. Mullin, to -- you probably have heard by now if you've ever been before me I tend to have a hot bench.  I ask questions.  That's why we have hearings.  When I was trying cases, I wanted the judge to talk to me.  I didn't want he or she just to -- I'm asking you because you're entitled to know what my thoughts are.

**MR. MULLIN:**  Yes.

         **THE COURT:**  The reason I asked that first question was
that clearly they were aware of this type of problem before he
was arrested on the streets of New York on December the 22nd of
last year, and I'm not questioning their *bona fides*, but you
indicated they had trouble getting ahold of their son.  The
reality is whenever they were aware of it they were not able to
immediately stop it.

         I understand your point is, well, he's going to be
under their thumb because he's going to be back in Texas.

         But I did note in the rather thorough report that you
procured from Mr. Byerley -- if I'm pronouncing his name
correctly?

         **MR. MULLIN:**  Yes, that's correct.

         **THE COURT:**  -- that there has been no prior mental
health treatment of any kind.  I understand it's projected to
give him mental health counseling or as we speak he has not had
any mental health counseling, correct?

         **MR. MULLIN:**  That is correct, Judge.

         **THE COURT:**  So the problem here is that in terms of
the Government's summary of evidence in the case and the
*indicia* of some obsessive conduct that the -- we're sort of
flying blind here in terms of how deep this mental health issue
is and this obsessiveness is based upon the proffer of the
Government, and we're dealing in a vacuum here.

         It isn't so much the *bona fides* of his parents; it's

the depth of what may or may not be an obsessive disorder that he has.

And we have -- I understand that there's been a suggestion as to Ms. Margaret Chandler or others that you indicated.  I'm not questioning that.

My point is is that this is -- in this day and age, even you've aptly noted, that in terms of trying to make sure there are no computers in the house, iPhones are mini computers.  And I certainly would not expect Mr. and Mrs. Singh not to have iPhones.  I mean, they've got to communicate with the world.  Some people don't even have fixed line telephones anymore.

So you still have vehicles that require just constant surveillance to make sure that he doesn't get ahold -- I mean, given I have no idea what his mental health condition is at this time.  There are still vehicles that would be available to him to perpetuate this kind of obsessive conduct.  I'm going to give you an opportunity to respond on that because that's what my concern is.

**MR. MULLIN:**  Two things, Judge.  Number one, what I contemplated -- when I spoke to Ms. Oakley's office -- and I also have another person who I recently used out of Virginia, again someone that would be available by telemedicine, who are very good.  These are psychologists.  These are highly-trained people and these are people that would do a deep dive

immediately and do an evaluation and that evaluation could be presented to the pretrial services, Your Honor, to see exactly what it is that's going on here, if anything. So that's number one.

Number two, the way that I'm sketching it out to Your Honor, he's basically going to being in a cocoon. He being Mr. Singh. And given that we're dealing with someone here who would otherwise be sitting in a jail over at Northern Neck waiting for trial wherever he is, sitting at trial [sic] receiving no treatment and dealing with --

THE COURT: He's been in Oklahoma thus far, but he would stay at Northern Neck presumably, right? Didn't you indicate he had been retained in Oklahoma for a time?

MR. MULLIN: That's correct. He started in Jersey. He was there for a short while. Then went Oklahoma, it's like a wait station there. And then he's been at Northern Neck for the past couple of weeks, Judge.

In terms -- I submit to the Court given the fact that it's the Government's burden, not ours, to show danger to the community, that we have set forth a plan that I would submit to you works. And there are numerous assurances that it will work. You got two people who flew from Texas to make sure it works. We're going to have a psychologist to make sure it works. We've got pretrial services who in my experience do a tremendous job to make sure that no one goes astray and if so

they call the court right away.

**THE COURT:** Again, we have pretrial services in Texas to whom that would be assigned, correct?

**MR. MULLIN:** Yes, that's my understanding. I haven't had a case in that jurisdiction, but I certainly can find out.

Then we have this young man who may well need to get someone to take a good, hard look at him and see what's going on.

So those are five reasons alone I submit to Your Honor that based upon the statute that we have here, and the factors that are being considered, that he is not a danger to the community in the sense that there are assurances and a program that's out there that will allow him to get bail.

And I would ask, Your Honor, again, he's 19 years old, Judge. He's still malleable to the extent -- it's not like you're dealing with someone whose been around forever. 19 years old, he's still malleable. If help is needed we can get the help and get it started with him now and so forth.

He's got no prior criminal history here. Except I think some mischief thing when he was 12 or 13 years old that apparently took place in a bathroom but nothing else. Nothing serious.

He's had no international travel. He's basically been to Texas, Maryland, and New York his life. So this gives us a chance to get deep into this thing, see what's really going on

without creating a risk to either the Jane Doe or the boyfriend.

So I submit to you, Your Honor, under the statute, under the factors that are considered here where the Government has the rebuttable presumption that we've submitted to you a plan that works. And we would ask Your Honor to allow us to implement that plan.

**THE COURT:** Thank you, Mr. Mullin. You've certainly submitted a plan where I'm satisfied there's not a risk of flight.

We still have the issue of danger to the community. I note that you had actually cited an opinion in this matter by Magistrate Judge Boardman, who the record will reflect had her hearing before the Senate yesterday to be confirmed as a district judge thereby allowing me to become a senior judge.

So it's somewhat appropriate that today, the day after her hearing, that I quote my good friend and colleague Judge Boardman when you had cited her opinion in matter of *United States v. Davis*, a case then assigned to Judge Hollander, last March. Really, the substance of that when all was said and done was it was the COVID-19 factors were the ones that came into play there in the early days of the -- of the COVID-19 pandemic issues.

It certainly seems to me that -- I'll hear from Mr. Myers in rebuttal in a moment here -- it certainly seems to

me that at minimum we need to have a study done here.  No

disrespect intended to a psychologist in Texas and no

disrespect to his parents who traveled here and are concerned.

We're really dealing in a void here.  This is

extraordinarily obsessive conduct that's alleged.  Not only in

terms of obsessive conduct on the internet, it's obsessive

conduct that's alleged in terms of swatting, sending police

officers to a home.

It's alleged and proffered that he actually visited

Maryland and came to Maryland.

I mean, there is just -- there is an alleged

obsessiveness here as to which we're really dealing in a vacuum

and that's of great concern to me.

**MR. MULLIN:**  Judge, could I be heard on that?

**THE COURT:**  That's why I'm telling you.  That's why

I'm speaking to you.

**MR. MULLIN:**  All right.  Thank you.

**THE COURT:**  Because I don't think anyone here in this

courtroom is really qualified to say how obsessive it is but

it's pretty bizarre alleged conduct.

I mean, the internet activity is pretty obsessive to

begin with.  When you start to get to the matter of swatting

and causing law enforcement authorities to arrive at a home and

the cost and the danger to that, that is a very dangerous

situation as I know you're well aware in terms of when you have

police officers arrive at a home with swat teams.

I don't know -- the phrase is "swatting" mainly because it causes swat teams to arrive. That's why it's called swatting, you know that, and to have that be part of the mix here. Along with then arriving in Maryland -- we have some -- we have allegations and proffers by the Government as to very obsessive conduct and clearly there are mental health issues, which you obviously recognize that need to be addressed. And you've created a -- certainly a very thoughtful program as to how you would address these mental health issues.

The difficulty the court has is we're really still dealing in a vacuum here with respect to that.

So you can certainly talk to Ms. Raquin if you want for a second there. She's trying to write you a note. That's quite all right.

**MR. MULLIN:** We're good, Judge.

**THE COURT:** Usually the younger the person the farther out, the more work they've done on these cases.

(Laughter.)

**MR. MULLIN:** She's terrific. I'm very lucky to have her.

**THE COURT:** That's why we have Ms. Martin much younger over here on this side on behalf of the Government as well.

**MR. MULLIN:** Judge, again, the Government has had the opportunity to conduct searches and collect evidence and all

1    that kind of stuff, which I respect.

2         But, we're dealing here in another world.  We're

3    dealing here online where there apparently was more than just

4    my client.  There was more than just Ms. Jane Doe and her

5    boyfriend.  That there's at least one other player that the

6    Government mentioned today out there.

7         Our position is on swatting -- which it's a terrible

8    thing, a horrible thing to do.  A, my client advises that he

9    didn't do that.  And B, what I'm advised is that his parents

10   were, I don't know what the correct term is, but pizza bombed

11   is the right term.  That someone did just the opposite.  And

12   they ended up ordering -- you know, pizza is not the same as

13   terrorism, I'm not going to suggest it, but that they were

14   victimized as well.  That their information was put on the

15   internet as well.

16        So it's another world here, Judge.  I'm not in a

17   position to unpack it right now.  I'm just not.

18        **THE COURT:**  I understand.

19        **MR. MULLIN:**  The initial impression is scary.  It's

20   scary when you hear these kind of allegations that are out

21   there, Judge, that were being made.

22        But I submit to you that what I'm being told is that a

23   lot of this had nothing to with my client number one; and

24   number two, that he and his family to a certain extent were the

25   victims of what was going on here.

1       Again, we're going to get to the bottom of it.  That's

2  part of our job.

3       But for purposes of bail, Your Honor, what I'm saying

4  is if we put him in a cocoon, if we have assurances that he's

5  going to do nothing, if we do a deep dive what, if anything, is

6  going on with him and what that means, I think that's enough to

7  meet what our responsibility is under 3142(e) and 3241 factors.

8       I would just ask Your Honor to implement an order to

9  that effect.  We could have weekly monitoring on this.  I can

10  get ahold of Dr. Oakley's office as soon as we're done, and so

11  we can get this thing going now, Your Honor.

12       **THE COURT:**  Well thank you very much, Mr. Mullin.

13       With that, Mr. Myers, I'd be glad to hear further from

14  you.

15       **MR. MYERS:**  Thank you, Your Honor.  First, to address

16  the question raised by the Court, the Defendant's family was

17  aware no later than late July of 2020 when after the swatting

18  attack on victim one's home local police responded in person in

19  Texas and contacted the parents.

20       **THE COURT:**  Apparently the Baltimore County Police

21  Department contacted local authorities in Texas?

22       **MR. MYERS:**  That's correct, Your Honor.  Because she

23  knew and reported sort of immediately that this is the guy

24  responsible.  And in fact some of the early harassing messages,

25  the message talking about, you know, "This is never going to

stop." The profane messages about, you know, how funny it's
going to be. All that came from his regular cellphone number,
not one of the anonymous numbers he got. Of course the
evidence of that is shown both on her device but also on his.

The suggestion that much of this didn't have anything
to do with the Defendant I have to take serious issue with. I
think the information set forth in the complaint, the
information in the speaking indictment, the information
obviously has been heard by the grand jury, it's been heard by
judges in New York and here in terms of issuing search
warrants.

And then his devices themselves which have thousands
of pictures, including the pictures from the victim's account
on them that have current access when the phone was seized
logging into her accounts that he had stolen.

I mean, the weight of the evidence, you know, as set
forth in the factors under 3142 weigh the evidence here. I
understand we're not at trial yet and they haven't had
discovery and all that, but the weight of the evidence is, I
think, overwhelming.

But on top of all that you have the Defendant's
statements himself and when he was arrested and he waived
Miranda -- this is, you know, summarized in Page 14 of our
emergency motion -- that after initially denying knowing the
girl or having anything to do with, you know, the Defendant

stated, "If I were to -- if I did anything correct I wouldn't
have done anything big considering I didn't know her in real
life so I couldn't have done anything anyways.  If -- it's
probably in retaliation of what she, you know, accounts."

Then he said, "Everything I've done, if I've done
anything, is in retaliation."

That's the story of this case, Your Honor.  The
Defendant was acting in retaliation, but now he has much more
to retaliate for.  Because now it's not just him [sic]
complaining to her parents, it's not just the parents
telling -- or the police telling his parents to knock it off,
it's not the victims telling his sister and telling his mother
that he needs to knock it off, it's the Federal Government, the
United States verses the Defendant.

He knows he is facing serious criminal charges with
serious criminal penalties, and he has more incentive now than
he has ever had to lash out against these victims.  And he's
shown his inability to restrain himself from those impulses.

While the Defendant may have put his parents through
hell through all this, without question he has put the victims
and their families through hell, and they're the ones who
deserve to be protected under the statute.

They specifically expressed relief that the Defendant
is detained and is unable to contact them any further.

And I think that the Defendant's history of hacking

accounts and in fact two substantive charges against him for

stealing access to people's electronic accounts shows his

ability and facility in getting access to electronic

communications that he should not have access to.  So I think

that should give the Court even more concern that no matter

what conditions you impose on him he's going to find a way to

get past them because he has the ability to do so.  He's

obviously a very smart, technically sophisticated kid.

I think that it's also important, and I don't think

this is in our papers, in October of 2020 the Defendant, after

the swatting, after all the text messages had started, after

all the harassing Instagram accounts, the Defendant called NYPD

and the Defendant made a report to NYPD claiming that victim

one was stalking him seeking them to arrest her for stalking

him.

Now, they didn't carry through with that, and I don't

think they finished that investigation because they couldn't

find her.  But he had the temerity after he's already had the

police contacting his parents, after she's told him she's

seeking a no contact order -- which she did but it was unable

to be served because they couldn't find his address at the

time -- after all those things had happened and after he had

texted her he had said in just this cold, calculating, brazen

way that "Expect a wave of the worse possible shit to happen to

you.  You think I'm kidding.  I'm genuinely never going to

stop.  It's going to be really funny."

        And he escalated that further by falsely reporting her

stalking him to the police, presumably like with provoking a

swatting attack, presumably to get law enforcement to enlist in

his campaign against this girl.

        The Defendant's conduct is gravely concerning.  I

think it shows, as the court has noted, the likelihood of some

serious, you know, mental instability, if not diagnoseable

mental health conditions.  And he can be evaluated.  And in

fact I've had defendants recently during the pandemic who were

evaluated while in federal custody.

        **THE COURT:**  I was going to get to that.  Where have

you had the evaluations?  I don't know the resources of the

marshal service can be stressed that we take him to Butner,

North Carolina.  That's quite an imposition on our marshal

staff which is overloaded now.

        But where could he be evaluated?

        **MR. MYERS:**  I think that's right, Your Honor.  The

Government wouldn't be moving for a competency evaluation or

something like that in this case, at least not on the facts we

know now.

        **THE COURT:**  Not so much a competency evaluation just

in terms of what his mental health status is.

        **MR. MYERS:**  And in the other case that I have where

actually recently a defendant pled guilty whom was sentenced by

Judge Bredar, which was *United States v. Jordan Milleson*, the federal public defenders who represented Mr. Milleson -- and there were some serious competency questions and we wanted to get it figured out, but we also didn't want to go through the Butner process in the midst of the pandemic.  And so the Federal Public Defender's Office actually contracted with and hired a licensed professional whose *bona fides* were acceptable to the Government as well and conducted an evaluation that the Government accepted, that the court accepted, to figure out.

Now there it was more about is he competent to proceed as opposed to, you know, trying to figure out what's going on in order to engage in some sort of treatment.  But I think it's sort of proof of concept that people can be evaluated while in custody, especially now with the explosion of telemedicine.

So for all those reasons, Your Honor, the Government thinks that pretrial detention here is particularly important, that the concerns that are raised aren't sufficiently mitigated by the protective measures proposed by the Defendant, and the Government would ask that the Defendant be held pending trial.

**THE COURT:**  Thank you very much, Mr. Myers.

**MR. MULLIN:**  Judge, can I be heard again?

**THE COURT:**  Certainly.  Go right ahead, Mr. Mullin.

**MR. MULLIN:**  Thank you Judge.  Judge, I think a couple of things Mr. Myers stated here inure to the benefit of releasing my client.

1         First, as to he made reference to the proceedings in

2    New York and obviously that's not binding on Your Honor.  But

3    the proceedings in New York there was I thought a very

4    well-thought-out plan pretty close to what we're looking at

5    here, Judge, that Judge Moses had contemplated for my client.

6    And I submit to you it's something that could work here.

7    That's number one.

8         Number two, in terms of my client filing a complaint

9    as to the victim, the Government makes the presumption that

10   that was false and this is outrageous conduct.  Judge, we

11   really don't know yet what we have here.  There are concerns,

12   again, I don't want to get back to what I was saying before,

13   but this is a different world, this internet, when you have

14   group chats and other players that are involved.

15        We've already seen examples where my client and his

16   family have been victimized by this.

17        So reverting back to the bail statute, Judge, in terms

18   of looking at the factors here the Government puts all its eggs

19   in one basket and that basket is a proffer that it makes as to

20   the weight of the evidence.

21        I ask Your Honor to look at all the factors here in

22   terms of his age, his prior criminal history, which is none

23   except for some mischief thing when he was 13.  The fact that

24   we have set forth a plan that is a viable plan here, Judge,

25   that can work.

He's going to be in a cocoon.  We're going to have someone take a look and see what's going on there, Judge. Rather than keeping this young man -- he's already been in about five months.

We're asking Your Honor, while Ms. Raquin and I prepare, as Mr. Myers does on behalf of his client, that he be allowed to at least be home and out of jail while that takes place.

**THE COURT:**  Thank you very much, Mr. Mullin.  The court must be guided by -- under the Bail Reform Act -- must guided by the factors under § 3142(g) of Title 18.

And essentially the Bail Reform Act requires that the court considers the following factors:  The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a federal crime of terrorism, or involves a minor victim of a controlled substance for example.

The weight of the evidence against the individual and the history and characteristics of the Defendant, including the person's character, physical and mental condition, the family ties, employment, family resources, past conduct, history related to drug and alcohol abuse, criminal history, and record concerning appearance.

Also, whether at the time of the current offense the person was on probation or parole, and also the nature and

seriousness of the danger to any person in the community that would be posed by the release of the individual.

If after a hearing on this, which we've now held, if the court finds that there are no condition or combination of conditions which, one, would reasonably assure the appearance of the person required, and the safety of any other person in the community, then the court shall order the detention of the person before trial.  That's pursuant to 18 United States Code § 3142(e)(1).

There's no question that generally that pretrial detention is disfavored as the Supreme Court has previously noted in *United States v. Salerno* at 481 U.S. 739, a 1987 opinion of the Supreme Court.  Although in that case the Supreme Court ultimately approved pretrial detention based upon the threat to the community.  Without question, the Bail Reform Act is to be preventive and not punitive as Judge Boardman quoted the Supreme Court previously as well and aptly noted.

The Defendant has no prior criminal convictions but unfortunately that's often the case in some of these cyber crimes and sexual crimes and the nature of it.

The Government has definitely proffered information about the scope of this activity, and I cannot ignore -- I cannot ignore the fact that as well-intentioned as his parents are that this -- there was clearly an awareness of this situation dating back to July of 2020 and yet it continued

unabated.

And the weight of the evidence here is very, very strong. We're not trying this case here today and this Defendant has a presumption of innocence, but the weight of the evidence here is quite strong.

There are electronic accounts and phone numbers that have been referenced that have been used in the course of this offense and are definitely -- there's proffer of evidence that it's tied to his known telephone number and email addresses. Not all, as Mr. Mullin has noted, but some of these threatening messages were clearly sent from the Defendant's primary telephone and social media accounts.

And there is essentially indications that he has acknowledged making accounts in the victim one's name and acknowledged taking over her Twitter account.

The evidence certainly indicates that -- there's strong evidence that he swatted Jane Doe. The phrase meaning to call law enforcement to cause a swat team to arrive.

And the -- from what I've reviewed of the file here, the iPhone evidence here is quite strong, if not overwhelming, in this case in terms of the log-in credentials, the various accounts, screen captures, and what have you, as well as the summary of the evidence that has been made here today.

In terms of -- apart from the evidence which is quite strong and the nature and circumstance of this offense and a

long period of cyberstalking and harassment, in terms of the
history and characteristics of this Defendant they are of great
concern to the Court; specifically in terms of his mental
condition and his past conduct as noted under those factors
under 3142(g) of Title 18 under the Bail Reform Act.  The
obsessive behavior and fixation of this I think is quite
concerning.  We're literally -- we don't know what we're
dealing with here.

And defense counsel has very thoroughly had a review
here, but Mr. Byerley, who wrote a very thorough report -- just
for the record Mr. Byerley, B-Y-E-R-L-Y, if I'm pronouncing his
name correctly?

**MR. MULLIN:**  You are, Judge.

**THE COURT:**  I've certainly read his report and he
certainly is qualified to have conducted this report.  He's a
former U.S. probation officer.  But the simple fact of the
matter is it reflects that there has been no mental health
treatment previously of this Defendant and that yet this
conduct has continued unabated.  So it is an absolute unknown
in terms of how serious mental condition he has.  But the past
conduct of him and his mental health is of great concern to the
Court.  Clearly it's not so much based upon whether he's a risk
of flight.

I do have some concern -- it's proffered that he
traveled from New York to Maryland seeking some kind of

physical confrontation.  But the focus here is with respect to the safety of other persons and the community.

And the -- the difficulty here is is that the smallest of devices, including burner phones and iPhones and what have you, are still in this day and age now capable of rendering one internet-enabled so to speak, as I think the Government's phrase has been.  The record here has been proffered that his parents clearly were put on notice.  This situation should have been dealt with a long time ago, a long time ago.

As abusive as the use of the internet is, the matter of swatting is of great concern to this court and that past conduct and the proffer of evidence there is not to be taken lightly.

Anyone involved in law enforcement knows full well what the implications are when swat teams arrive and some bad things can happen in a hurry, including people who don't know why they're being swatted that think may be armed.  You know, false police arrive at their door, people get hurt.  Some people die in these kind of swatting incidents.

And the simple fact of the matter is that the evidence before me is that his parents were certainly aware of a serious condition degenerating as of June or July of last year, and he was not arrested until December the 22nd.  That's the record before me here now that this whole conduct continued unabated.

And I believe that there is a serious threat to the

community that would be presented should he be released.   And
I'm not satisfied that any conditions can be structured so as
to mitigate that -- that danger here.

In terms of the danger to the community and the
serious allegation and the plain language of the statute
requires me to evaluate the nature and seriousness of the
danger, and there are different levels of danger that rise to
different sanctions here.  But without question, the danger to
the community in this type of crime is very evident to me and
is taken very seriously by the court.

So for those reasons as set forth on the record here
today, the Defendant shall be ordered detained pursuant to the
consideration of factors under 18 United States Code § 3142(g),
and having conducted a detention hearing under § 3142(f), I
make those findings of fact.

In terms of the checking the boxes here, let me just
note, I have an order of detention that I'll be signing here.
I've noted the -- noted that the Government is seeking
detention here and that the Defendant is charged under 18
United States Code § 2261A(2) for cyberstalking and 18 United
States Code § 1028A for aggravated identity theft.

What are the maximum terms of imprisonment for those
offenses, Mr. Myers?

**MR. MYERS:**  Your Honor, the cyberstalking under these
circumstances carries up to five years imprisment, and the

aggravated identity theft charges both carry a two-year
mandatory sentence consecutive to any other sentence except
that the two don't have to be consecutive to each other.

   **THE COURT:** Right. So essentially the maximum term
imprisonment if he's convicted is five years plus two years
consecutive, correct?

   **MR. MYERS:** Or two five-year counts. So if the
court were to give him the legal maximum --

   **THE COURT:** I'm just trying to clarify. The maximum
term of imprisonment --

   **MR. MYERS:** Yes, sir.

   **THE COURT:** -- is ten years imprisonment, correct?

   **MR. MYERS:** Ten years plus if they stack the two so
14, Your Honor.

   **THE COURT:** Four years consecutive. And based upon
the Government's proffer in evidence there is probable cause to
believe that this Defendant has failed to rebut the presumption
as to danger. The Government is not so much seeking risk of
flight as it is danger, correct, Mr. Myers?

   **MR. MYERS:** Danger is the primary basis, correct, Your
Honor. And there is no presumption here so the burden is on
the Government throughout.

   Although, I would like to very quickly correct just
for the record, in case the defense wants to have this
reviewed, is that the investigation since the filing of our

emergency motion has shown, and I apologize if I didn't clarify enough, that the account that said in July of 2019 that there was going to be a party at the victim's house, that account we can tie directly to the Defendant.  The account used soon after the swatting to send the message saying "You're getting swatted," that is an anonymous phone account that we can tie to the Defendant.  But the actual swatting email sent to Baltimore County was sent, our evidence has shown, by the juvenile in Illinois.  And the messages found on the Defendant's phone show that they were discussing his payment to the juvenile for swatting.

**THE COURT:**  All right.  I'm also -- I'm checking here I find by clear and convincing evidence the information produced at this hearing that the Defendant poses a risk to the safety of other persons.  I'm not finding a risk of flight here, but I'm finding danger to other persons.  I'll add these written statements of additional factors as well.

The Government has proffered strong evidence with overwhelming weight as to the evidence of these charges.  Furthermore, the mental condition of the Defendant suggests obsessive conduct.  Any release of the Defendant would pose a danger to the community.

I'll sign this today.

I hereby order that he be detained, and I've signed an order of detention.

1          Madam clerk.

2          Excuse my handwriting on that, Counsel.

3          **THE COURT:**  Thank you very much, Ms. Carter.

4          Is there anything further from the point of view of

5     the Government on this matter, Mr. Myers?

6          **MR. MYERS:**  There is nother further from the

7     Government, Your Honor.  Thank you very much.

8          **THE COURT:**  Anything further, Mr. Mullin, from the

9     point of view of the defense?

10          **MR. MULLIN:**  Not at this time, Your Honor.

11          **THE COURT:**  I'm sorry, I can't hear you.

12          **MR. MULLIN:**  Not at this time, Your Honor.  Thank you.

13          **THE COURT:**  You certainly have a right to appeal to

14     the United States Court of Appeals to the Fourth Circuit.

15          **MR. MULLIN:**  Okay.

16          **THE COURT:**  Mr. Myers, make sure you keep up on the

17     briefing on that.  I think they're going to want you to write a

18     brief or something.  I was flying blind here.  The Government

19     never responded.

20          **MR. MYERS:**  Yes, Your Honor.

21          **THE COURT:**  So if there is an appeal I would very much

22     urge you file a response.

23          **MR. MYERS:**  Yes.  Thank you, Your Honor.

24          **THE COURT:**  I don't want you to be in the same

25     position before a Fourth Circuit judge when you were in front

1 of me when you were not aware of the fact they filed anything.

2    **MR. MYERS:** Thank you.  I appreciate that, Your Honor.

3    **THE COURT:** Not a way to run a railroad so.

4    **MR. MYERS:** No, it is not, Your Honor.  My apologies.

5    **THE COURT:** That's quite all right.  Don't let it

6 happen in front of the Fourth Circuit.  That would not be good

7 after having it happen once at the district level.  Make sure

8 you read what's been filed and keep up on the docket and make

9 sure you respond for the Fourth Circuit.

10    **MR. MYERS:** Yes, Your Honor.

11    **THE COURT:** All right.  Anything else?

12    **MR. MULLIN:** No, Judge.  Thank you very much.

13    **THE COURT:** Thank you, Mr. and Mrs. Singh, for being

14 here.  This case will proceed and your son is in very good

15 hands with respect to the lawyers he's retained.  So with that

16 this court stand adjourned for the day.

17    **THE CLERK:** All rise.  This Honorable Court is

18 adjourned.

19    (Hearing adjourned at 12:46 p.m.)

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, Ronda J. Thomas, Registered Professional Reporter,

 5     Certified Realtime Reporter, in and for the United States

 6     District Court for the District of Maryland, do hereby certify,

 7     pursuant to 28 U.S.C. § 753, that the foregoing is a true and

 8     correct transcript of the stenographically-reported proceedings

 9     held in the above-entitled matter and the transcript page

10     format is in conformance with the regulations of the Judicial

11     Conference of the United States.

12

13                         Dated this 25th day of May 2021.

14

15

16                         _____
                                Ronda J. Thomas
17                         RONDA J. THOMAS, RPR, CRR

18                         FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```

**MR. MULLIN: [43]** 3/2
3/12 10/25 12/14 13/16
13/20 16/24 17/16 18/23
28/12 28/17 28/20 28/23
29/2 30/7 31/4 31/16 31/21
32/3 32/6 32/10 32/13
32/19 32/22 33/25 34/13
34/18 35/20 36/14 37/4
39/14 39/17 40/16 40/20
40/24 41/19 47/21 47/23
52/13 57/10 57/12 57/15
58/12
**MR. MYERS: [35]** 2/13
2/19 2/21 2/24 3/25 12/12
12/22 13/4 14/1 14/14
14/21 15/25 16/4 16/12
16/16 17/14 20/3 20/6 28/4
28/8 42/15 42/22 46/18
46/24 54/24 55/7 55/11
55/13 55/20 57/6 57/20
57/23 58/2 58/4 58/10
**MS. MARTIN: [2]** 14/6
14/9
**MS. RAQUIN: [3]** 3/4 4/12
4/14
**THE CLERK: [17]** 13/12
15/17 16/8 17/17 17/20
18/2 18/5 18/8 18/10 18/12
18/15 18/18 18/20 19/4
19/8 19/11 58/17
**THE COURT: [93]**
**THE DEFENDANT: [13]**
3/16 4/19 9/20 10/6 11/3
18/7 18/9 18/11 18/14
18/17 18/19 19/7 19/10

**0**

**0116 [1]** 2/3

**1**

**10 [2]** 5/21 15/1
**100 [1]** 6/4
**101 [1]** 1/25
**1028A [3]** 4/24 9/17 54/21
**11-page [1]** 13/24 14/12
**11:05 [1]** 1/6
**12 [1]** 37/20
**12:46 [1]** 58/19
**13 [3]** 1/5 37/20 48/23
**1343 [1]** 9/16
**14 [3]** 5/16 43/23 55/14
**16 [3]** 12/24 13/7 13/10
**18 [17]** 2/6 4/22 4/23 8/14
9/4 9/15 9/16 11/22 11/25
12/9 20/1 49/11 50/8 52/5
54/13 54/19 54/20
**19 [8]** 6/24 7/16 18/9 27/3
37/14 37/16 38/21 38/22
**19-year-old [1]** 20/11
**1963 [1]** 17/8
**1984 [1]** 12/8
**1987 [1]** 50/12
**1:21-cr-00116-RDB [1]** 1/4

**2**

**20 [1]** 7/1
**2001 [1]** 18/11
**2013 [1]** 5/8
**2014 [1]** 5/8
**2019 [2]** 5/14 56/2

**2020 [20]** 5/16 5/22 6/3 6/4
6/14 6/19 6/24 7/2 7/10
7/16 8/1 8/15 8/15 8/16
8/16 12/4 26/21 42/17
45/10 50/25
**2021 [2]** 1/5 59/13
**21 [2]** 7/10 12/6
**21201 [1]** 1/25
**22 [1]** 12/4
**2261A [3]** 4/22 9/5 54/20
**22nd [5]** 11/11 11/12
31/24 34/3 53/23
**23rd [3]** 12/24 13/8 13/14
**24 [2]** 6/4 8/15
**24/7 [3]** 30/14 31/1 33/12
**25th [1]** 59/13
**28 [1]** 59/7
**28th [2]** 11/20 11/22

**3**

**3142 [12]** 2/7 12/1 12/9
15/9 20/1 42/7 43/17 49/11
50/9 52/5 54/13 54/14
**3145 [1]** 11/23
**3241 [1]** 42/7
**373 [1]** 17/8

**4**

**481 [1]** 50/12
**4th [1]** 1/25

**7**

**739 [1]** 50/12
**753 [1]** 59/7

**8**

**83 [1]** 17/8

**9**

**924 [1]** 15/13

**A**

**a.m [1]** 1/6
**ability [2]** 45/3 45/7
**able [6]** 11/7 22/21 27/5
27/18 30/8 34/6
**about [19]** 5/15 6/3 6/19
6/23 6/23 7/1 7/10 7/16
8/14 16/6 23/7 24/1 30/16
33/1 42/25 43/1 47/10 49/4
50/22
**above [2]** 1/8 59/9
**above-entitled [2]** 1/8 59/9
**absolute [1]** 52/19
**abuse [1]** 49/22
**abusive [1]** 53/10
**acceptable [1]** 47/7
**accepted [2]** 47/9 47/9
**accepting [1]** 23/24
**access [10]** 2/15 2/24 7/14
7/16 8/1 25/5 43/14 45/2
45/3 45/4
**accorded [1]** 9/25
**according [1]** 4/3
**account [15]** 7/17 7/18
7/18 7/22 8/2 9/9 9/9 9/14
22/12 43/13 51/15 56/2
56/3 56/4 56/6
**accounts [18]** 6/5 6/25
7/15 7/24 8/7 8/13 23/9
23/15 25/14 43/15 44/4
45/1 45/2 45/12 51/6 51/12

**51/14 51/22
acknowledged [2]** 51/14
51/15
**acquaintance [1]** 5/5
**Act [8]** 12/8 14/23 17/1
19/19 49/10 49/12 50/16
52/5
**acting [2]** 23/5 44/8
**actions [1]** 24/13
**activities [1]** 7/20
**activity [3]** 26/18 39/21
50/22
**acts [1]** 20/24
**actual [1]** 56/7
**actually [6]** 6/9 13/5 38/12
39/9 46/25 47/6
**add [1]** 56/16
**addition [1]** 25/11
**additional [1]** 56/17
**address [6]** 7/17 8/2 28/11
40/10 42/15 45/21
**addressed [1]** 40/8
**addresses [1]** 51/9
**adhere [1]** 17/9
**adjourned [3]** 58/16 58/18
58/19
**adjusted [1]** 30/23
**admission [1]** 9/25
**advances [1]** 51/19
**advised [2]** 32/14 41/9
**advises [1]** 41/8
**afford [1]** 10/3
**afraid [1]** 26/5
**after [23]** 11/25 21/1 21/1
21/3 21/5 21/14 21/23
22/11 24/2 24/8 38/16
42/17 43/24 45/10 45/11
45/11 45/18 45/19 45/22
45/22 50/3 56/4 58/7
**again [11]** 3/18 7/25 14/23
33/2 35/23 37/2 37/14
40/24 42/1 47/21 48/12
**against [13]** 2/5 5/24 8/11
9/18 10/15 11/10 16/14
18/22 24/25 44/17 45/1
46/5 49/18
**age [5]** 18/8 27/3 35/6
48/22 53/5
**agencies [1]** 22/5
**agent [5]** 1/16 2/15 2/20
2/23 2/25
**aggravated [5]** 4/23 9/6
9/17 54/21 55/1
**ago [4]** 19/1 21/22 53/9
53/9
**ahead [2]** 29/1 47/22
**ahold [5]** 32/17 32/20 34/5
35/14 42/10
**alcohol [1]** 49/22
**all [48]** 3/17 3/22 4/5 4/9
4/21 11/1 14/15 14/16 16/5
16/8 16/21 16/22 17/3
19/12 22/5 22/12 22/25
23/14 23/15 24/12 25/1
25/17 25/17 26/7 26/14
26/15 27/21 32/13 32/24
38/20 39/17 40/15 40/25
43/2 43/19 43/21 44/20
45/11 45/12 45/22 47/15
48/18 48/21 51/10 56/12
58/5 58/11 58/17
**allegation [2]** 31/19 54/5

**allegations [2]** 40/6 41/20
**alleged [35]** 5/6 5/12 5/15
5/19 5/21 6/1 6/2 6/6 6/9
6/11 6/13 6/14 6/17 6/19
6/20 6/23 7/1 7/10 7/13
7/15 7/20 7/21 7/25 8/4
9/10 9/11 25/11 29/21
31/15 32/2 39/5 39/7 39/9
39/11 39/20
**allegedly [7]** 5/2 5/3 6/16
6/22 8/9 8/12 31/25
**allow [3]** 30/12 37/13 38/6
**allowed [3]** 27/2 30/8 49/7
**allowing [1]** 38/15
**almost [1]** 33/5
**alone [1]** 37/9
**Along [1]** 40/5
**already [6]** 10/8 45/18
48/15 49/3
**also [21]** 1/15 5/6 5/7 5/24
8/9 8/19 8/12 13/21
22/12 22/15 25/17 27/16
31/2 35/22 43/4 45/9 47/4
49/24 49/25 56/12
**although [3]** 20/22 50/13
55/23
**always [1]** 30/25
**am [2]** 4/11 4/18
**Amanda [1]** 31/7
**AMERICA [1]** 1/3
**among [1]** 14/25
**analysis [2]** 29/5 29/10
**anger [1]** 24/11
**anonymous [4]** 7/6 7/11
43/3 56/6
**another [6]** 9/13 25/7
29/25 35/22 41/2 41/16
**answer [1]** 19/2
**any [21]** 5/20 8/24 10/11
10/12 10/14 17/13 25/5
26/12 26/24 27/6 29/4
30/20 33/13 34/15 34/17
44/24 50/1 50/6 54/2 55/2
56/21
**anymore [1]** 35/12
**anyone [4]** 4/12 4/14
39/18 53/14
**anything [12]** 36/3 42/5
43/5 43/25 44/1 44/2 44/3
44/6 57/4 57/8 58/1 58/11
**anyways [1]** 44/3
**apart [1]** 51/24
**apartments [1]** 20/12
**apologies [3]** 13/4 14/1
58/4
**apologize [1]** 56/1
**apparently [6]** 6/1 24/9
31/10 37/21 41/3 42/20
**appeal [2]** 57/13 57/21
**Appeals [1]** 57/14
**appear [3]** 15/7 20/18 29/3
**appearance [15]** 2/4 4/3
4/4 4/7 4/8 6/12 10/22
10/22 11/5 11/13 15/11
19/22 28/1 49/23 50/5
**appeared [1]** 3/8
**appearing [1]** 3/2
**appears [1]** 32/14
**applicable [1]** 15/6
**apply [1]** 15/18
**appointed [2]** 10/3 10/4
**appreciate [2]** 16/1 58/2

**appropriate [1]** 38/16
**appropriateness [1]** 25/25
**approved [1]** 50/14
**approximately [1]** 5/8
**April [6]** 6/3 8/14 12/6
12/24 13/8 13/14
**April 18 [1]** 8/14
**April 21 [1]** 12/6
**aptly [2]** 35/7 50/17
**are [42]** 2/4 3/18 9/2 12/7
12/17 14/19 15/6 17/5
18/20 19/15 26/5 30/4 33/4
33/24 35/8 35/8 35/16
35/23 35/24 35/24 35/25
36/21 37/9 37/11 37/12
38/4 39/3 40/7 41/20 47/17
48/11 48/14 50/4 50/24
51/6 51/8 52/2 52/13 53/5
53/15 54/7 54/22
**aren't [2]** 26/3 47/17
**argument [2]** 20/19 27/25
**Arizona [1]** 10/14
**armed [1]** 53/17
**around [2]** 37/16
**arraign [2]** 17/20 17/23
**arraignment [1]** 16/20
**arrangements [1]** 31/10
**arrest [3]** 11/12 30/12
45/14
**arrested [4]** 31/23 34/3
43/22 53/23
**arrive [6]** 39/23 40/1 40/3
51/18 53/15 53/18
**arriving [1]** 40/5
**as [96]**
**ASAP [1]** 7/6
**ask [7]** 32/4 33/21 37/14
38/6 42/8 47/19 48/21
**asked [3]** 5/20 21/10 34/1
**asking [2]** 33/23 49/5
**assigned [2]** 37/3 38/19
**assistant [2]** 2/13 31/8
**associate [2]** 5/25 8/6
**associated [2]** 7/18 8/2
**assurance [1]** 29/22
**assurances [3]** 36/21
37/12 42/4
**assure [5]** 15/10 19/22
19/23 26/4 50/5
**assured [2]** 33/17 33/18
**astray [1]** 36/25
**attached [2]** 13/24 13/25
**attachment [1]** 14/12
**attack [6]** 7/3 21/14 21/15
25/18 42/18 46/4
**attacking [1]** 23/5
**attempt [1]** 9/11
**Attorney [1]** 2/13
**Attorney's [1]** 17/10
**auspices [1]** 10/12
**authorities [4]** 21/13
21/14 39/23 42/21
**authority [2]** 9/12 9/14
**avail [1]** 6/16
**available [2]** 35/16 35/23
**aware [11]** 13/5 20/4
31/15 31/24 32/1 34/2 34/6
39/25 42/17 53/21 58/1
**awareness [1]** 50/24
**away [3]** 26/24 30/16 37/1

**B**

**BABLOO [3]** 1/4 2/3 18/7
**back [12]** 2/11 3/9 3/9 16/6 23/23 26/20 32/8 32/9 34/9 48/12 48/17 50/25
**bad [4]** 24/11 24/11 26/14 53/15
**bail [11]** 12/8 14/23 19/19 29/24 37/13 42/3 48/17 49/10 49/12 50/15 52/5
**Baltimore [5]** 1/5 1/25 7/5 42/20 56/7
**Barbara [1]** 11/15
**based [6]** 29/18 34/23 37/10 50/14 52/22 55/15
**bases [1]** 16/21
**basically [2]** 36/6 37/23
**basis [2]** 20/7 55/20
**basket [2]** 48/19 48/19
**bathroom [1]** 37/21
**be [86]**
**bear [1]** 23/19
**bears [1]** 19/20
**became [3]** 5/2 5/7 33/9
**because [18]** 3/20 4/1 14/16 23/4 25/1 27/10 29/20 32/21 33/24 34/9 35/18 39/18 40/3 42/22 44/9 45/7 45/17 45/21
**become [2]** 32/1 38/15
**been [39]** 3/22 4/20 7/22 9/24 10/8 12/3 12/3 16/20 17/18 18/12 18/16 19/4 21/21 23/3 29/25 30/1 33/5 33/14 33/14 33/20 34/14 35/3 36/11 36/13 36/16 37/16 37/23 43/9 43/9 48/16 49/3 51/7 51/7 51/23 52/17 53/7 53/7 53/9 58/8
**before [18]** 1/9 3/8 3/8 11/21 19/16 21/12 26/11 27/6 29/4 29/25 33/20 34/2 38/14 48/12 50/8 53/21 53/24 57/25
**beg [1]** 21/5
**begged [2]** 21/1 21/5
**begin [1]** 39/22
**beginning [2]** 5/12 6/2
**behalf [12]** 1/11 1/13 2/14 3/1 3/3 3/5 13/23 23/5 29/7 29/8 40/23 49/6
**behavior [5]** 21/9 22/25 27/19 33/16 52/6
**being [12]** 10/14 25/1 25/8 26/22 29/21 36/6 36/6 37/11 41/21 41/22 53/17 58/13
**believe [6]** 3/11 4/4 26/12 29/11 53/25 55/17
**believes [1]** 27/21
**bench [2]** 16/6 33/21
**benefit [1]** 47/24
**BENNETT [1]** 1/9
**best [7]** 4/12 4/14 32/24 33/2 33/16 33/16 33/16
**better [1]** 28/17
**big [2]** 26/13 44/2
**binding [1]** 48/2
**birth [1]** 18/10
**bit [2]** 16/18 28/22
**bitcoin [1]** 22/18

bizarre [1] 39/20
blind [2] 34/22 57/18
Boardman [3] 38/13 38/18 50/16
bodily [1] 9/1
bomb [1] 7/7
bombed [1] 41/10
bona [3] 34/4 34/25 47/7
bond [1] 13/24
borne [1] 12/18
both [11] 1/6 17/4 20/7 21/3 21/4 25/8 30/5 30/24 33/17 43/4 55/1
bottom [1] 42/1
boxes [1] 54/16
boy [3] 32/17 32/20 33/12
boyfriend [3] 23/17 38/2 41/5
bracelet [2] 30/13 30/15
Brady [1] 17/7
brazen [1] 45/23
break [1] 32/5
Bredar [1] 47/1
brief [5] 14/2 16/3 16/5 16/9 57/18
briefing [1] 57/17
bring [1] 22/24
bulk [1] 20/19
burden [6] 12/18 15/2 15/3 19/20 36/19 55/21
burner [1] 53/4
Butner [2] 46/14 47/5
Byerley [5] 29/10 29/10 34/11 52/10 52/11

**C**

calculating [1] 45/23
calculus [1] 23/4
call [4] 22/8 33/6 37/1 51/18
called [3] 31/7 40/3 45/12
calling [2] 2/2 24/20
came [5] 1/8 24/17 38/21 39/10 43/2
campaign [8] 5/3 5/24 6/16 7/13 8/5 23/17 24/25 46/5
can [28] 12/16 13/13 13/16 13/18 14/10 19/14 26/4 27/6 28/21 31/13 32/3 32/5 32/7 33/4 37/5 37/17 40/13 42/9 42/11 46/9 46/14 47/13 47/21 48/25 53/16 54/2 56/4 56/6
can't [4] 17/19 26/6 27/4 57/11
cannot [2] 50/22 50/23
capable [2] 14/11 53/5
captures [1] 51/22
care [1] 30/9
carefully [1] 24/5
Carolina [1] 46/15
carried [3] 5/3 5/23 25/4
carries [2] 14/22 54/25
carry [2] 45/16 55/1
Carter [7] 13/13 13/18 14/10 15/16 18/1 19/13 57/3
case [24] 2/20 2/20 3/24 10/8 11/9 14/25 26/6 27/10 28/7 29/25 33/16 33/18 34/20 37/5 38/19 44/7

46/20 46/24 50/13 50/19 51/3 51/21 55/24 58/14
cases [2] 33/22 40/18
category [2] 12/17 14/19
cause [3] 10/9 51/18 55/16
causes [1] 40/3
causing [1] 39/23
cellphone [1] 43/2
certain [4] 15/6 15/12 19/25 41/24
certainly [16] 9/24 12/25 13/16 35/9 37/5 38/8 38/24 38/25 40/9 40/13 47/22 51/16 52/14 52/15 53/21 57/13
CERTIFICATE [1] 58/21
Certified [1] 59/5
certify [1] 59/6
chance [1] 37/25
Chandler [3] 31/3 31/4 35/4
changed [3] 7/17 8/2 26/9
character [2] 6/11 49/20
characteristics [3] 27/15 49/19 52/2
charge [4] 9/4 9/6 15/13 22/24
charged [9] 4/20 4/25 5/8 14/22 19/5 20/23 22/24 49/14 54/19
charges [13] 4/9 9/2 9/18 12/21 14/19 18/16 18/18 18/21 18/25 44/15 45/1 55/1 56/19
charging [1] 9/3
chat [2] 22/16 23/1
chatroom [1] 22/19
chats [1] 48/14
checking [2] 54/16 56/12
choosing [1] 9/22
Circuit [4] 57/14 57/25 58/6 58/9
circumstance [1] 51/25
circumstances [2] 49/14 54/25
cited [3] 38/12 38/18
citizen [1] 25/14
City [4] 3/12 11/13 32/21 32/22
claiming [1] 45/13
clarify [3] 12/16 55/9 56/1
Clark [1] 13/11
clear [7] 18/23 19/22 26/12 27/16 27/24 29/2 56/13
clearly [5] 17/8 24/7 26/5 34/2 40/7 50/24 51/11 52/22 53/8
clerk [1] 11/4 17/17 57/1
client [13] 13/23 18/24 29/3 29/11 29/23 41/4 41/8 41/23 47/25 48/5 48/8 48/15 49/6
clients [1] 30/14
close [1] 48/4
closer [1] 28/14
co [1] 21/19
co-conspirator [1] 21/19
cocoon [3] 36/6 42/4 49/1
Code [12] 2/7 4/22 4/23 9/5 9/16 9/17 11/23 12/1 50/8 54/13 54/20 54/21

cold [1] 45/23
colleague [1] 38/17
collect [1] 40/25
college [3] 20/11 24/23 26/19
combination [4] 15/10 19/21 26/3 50/4
come [2] 15/4 24/6
comments [1] 6/22
commerce [2] 8/23 8/24
committed [6] 20/22 20/23 20/25 25/10 25/21 33/4
communicate [1] 35/10
communication [4] 6/5 6/20 8/22 8/23
communications [5] 6/6 6/7 6/10 22/10 45/4
community [19] 15/5 15/12 15/22 19/24 20/8 28/3 29/6 29/23 36/20 37/12 38/11 50/1 50/7 50/15 53/2 54/1 54/4 54/9 56/22
company [1] 13/22
competency [3] 46/19 46/22 47/3
competent [1] 47/10
complaining [1] 44/10
complaint [8] 4/8 11/10 11/13 22/16 32/15 33/1 43/7 48/8
computer [2] 8/22 30/17 30/18
computers [2] 35/8 35/9
concept [1] 47/13
concern [9] 20/14 27/17 35/19 39/13 45/5 52/3 52/21 52/24 53/11
concerned [2] 16/21 39/3
concerning [3] 46/6 49/23 52/7
concerns [3] 29/17 47/17 48/11
conclusion [1] 29/14
condition [14] 15/10 19/21 19/23 23/20 24/10 26/3 27/25 35/15 49/20 50/4 52/4 52/20 53/22 56/20
conditions [8] 11/18 15/10 19/21 26/3 45/6 46/9 50/5 54/2
conduct [26] 6/13 8/9 8/25 23/2 25/21 26/18 27/19 28/3 31/25 34/21 35/17 39/5 39/6 39/7 39/20 40/7 40/25 46/6 48/10 49/21 52/4 52/19 52/21 53/12 53/24 56/21
conducted [8] 10/21 11/5 11/14 11/21 11/24 47/8 52/15 54/14
conducting [1] 12/8
Conference [1] 59/11
confident [1] 17/10
confirm [1] 14/18
confirmed [1] 38/14
confirms [1] 17/6
conform [1] 27/19
conformance [1] 19/10
confrontation [1] 53/1
Congress [1] 17/2
Connecticut [1] 25/14

connection [1] 15/5
cons [1] 29/19
consecutive [4] 55/2 55/3 55/6 55/15
consider [2] 20/1 26/24
consideration [2] 28/5 54/13
considered [3] 27/14 37/11 38/4
considering [4] 11/25 25/25 27/14 44/2
considers [1] 49/13
conspirator [1] 21/19
constant [1] 35/13
consult [1] 10/18
contact [6] 5/12 5/20 6/18 21/11 44/24 45/20
contacted [4] 7/3 21/4 42/19 42/21
contacting [1] 45/19
contains [1] 13/22
contemplated [2] 35/21 48/5
contention [1] 10/8
context [3] 22/23 22/25 23/18
continued [6] 6/18 19/17 21/6 50/25 52/19 53/24
continuing [1] 6/3
contracted [1] 47/6
control [3] 24/11 27/1 30/21
controlled [2] 7/19 49/16
conversations [1] 5/13
converted [1] 25/15
convicted [1] 55/5
convictions [2] 27/12 50/18
convince [1] 25/24
convincing [2] 19/23 56/13
copies [1] 23/25
copy [4] 13/13 14/7 14/10 18/12
core [1] 20/20
correct [32] 3/24 3/25 10/23 10/25 11/2 12/19 12/22 13/2 13/10 13/15 13/16 14/21 16/15 16/16 16/23 16/24 19/9 31/21 34/13 34/17 34/18 36/14 37/3 41/10 42/22 44/1 55/6 55/12 55/19 55/20 55/23 59/8
correctly [5] 4/11 4/18 12/10 34/12 52/12
cost [1] 39/24
could [12] 10/2 10/3 23/23 25/17 26/12 27/1 33/12 36/1 39/14 42/9 46/17 48/6 couldn't [3] 44/3 45/17 45/21
counsel [15] 2/9 2/12 3/19 9/22 10/1 10/3 10/3 10/18 10/19 16/11 17/5 17/6 19/14 52/9 57/2
counseling [2] 34/16 34/17
count [9] 3/23 3/24 4/21 5/15 8/15 9/7 9/8 9/8 9/9 counts [9] 9/2 9/6 11/2 16/23 19/5 19/8 20/16

## C

counts... [2] 20/23 55/7
County [3] 7/5 42/20 56/8
couple [4] 21/22 32/15
36/17 47/23
course [7] 5/21 8/9 8/25
26/15 26/23 43/3 51/7
court [51] 1/1 9/24 10/3
10/13 11/11 11/16 14/1
15/25 16/8 17/4 17/5 19/16
20/3 21/1 21/15 21/25
22/15 23/25 26/7 26/8 27/3
28/11 29/8 29/21 30/4
30/11 36/18 37/1 40/11
42/16 45/5 46/7 47/9 49/10
49/13 50/4 50/7 50/11
50/13 50/14 50/17 52/3
52/22 53/11 54/10 55/8
57/14 58/16 58/17 59/6
59/17
court were [1] 55/8
court's [2] 23/4 27/20
court-appointed [1] 10/3
courtroom [2] 32/9 39/19
covered [1] 16/21
COVID [2] 38/21 38/22
COVID-19 [2] 38/21 38/22
cr [1] 1/4
create [2] 14/20 33/13
created [6] 6/25 7/18 7/24
8/6 12/20 40/9
creating [1] 38/1
credentials [3] 9/14 31/6
51/21
crime [4] 15/14 49/15
49/15 54/9
crimes [2] 50/20 50/20
criminal [15] 1/3 2/3 4/6
10/16 17/3 17/3 20/25
27/12 27/13 37/19 44/15
44/16 48/22 49/22 50/18
cross [1] 19/13
CRR [2] 1/24 59/16
current [2] 43/14 49/24
custodians [1] 33/10
custody [3] 30/3 46/11
47/14
cutting [1] 26/25
cyber [1] 50/19
cyberstalked [1] 25/12
cyberstalking [10] 4/21
5/3 5/7 5/24 8/4 9/3 23/17
52/1 54/20 54/24

## D

danger [22] 15/4 20/7
20/20 23/19 25/7 29/5
29/23 36/19 37/11 38/11
39/24 50/1 54/3 54/4 54/7
54/7 54/8 55/18 55/19
55/20 56/16 56/22
dangerous [1] 39/24
date [1] 17/4
Dated [1] 59/13
dating [1] 50/25
Davis [1] 38/19
day [8] 5/16 22/12 27/3
35/6 38/16 53/5 58/16
59/13
days [1] 38/22
de [2] 12/1 20/4

dealing [10] 34/24 36/7
36/10 37/16 39/4 39/12
40/12 41/2 41/3 52/8
dealt [1] 53/9
death [1] 9/1
decapitate [1] 22/18
December [9] 5/14 11/11
11/12 11/20 11/22 12/4
31/23 34/5 53/23
December 22 [1] 12/4
decided [1] 21/12
decision [1] 24/11
decision-making [1] 24/11
deep [4] 34/22 35/25
37/25 42/5
deeply [1] 29/19
defendant [62]
Defendant's [19] 13/9
14/24 19/22 20/20 21/4
21/20 22/22 23/5 24/4 25/3
25/15 25/20 26/11 42/16
43/21 44/25 46/6 51/11
56/9
defendants [1] 46/10
Defender's [1] 47/6
defenders [1] 47/2
defense [7] 16/11 17/4
17/6 19/14 52/9 55/24 57/9
definitely [4] 10/17 19/2
50/21 51/8
degenerating [1] 53/22
delved [2] 31/16 33/2
demanding [2] 24/20
24/21
denigrated [1] 6/11
denigrating [2] 25/16
25/16
denying [1] 43/24
Department [1] 42/21
depth [1] 35/1
derogatory [1] 24/20
deserve [1] 44/22
DESMOND [4] 1/4 2/3 18/7
22/17
detained [3] 44/24 54/12
56/24
detention [19] 1/8 2/6
10/19 12/3 12/4 12/7 14/24
15/2 19/17 20/6 27/22
47/16 50/7 50/11 50/14
54/14 54/17 54/19 56/25
determine [1] 31/22
determined [3] 7/9 12/2
21/16
device [2] 27/5 43/4
devices [5] 22/1 22/3 25/6
43/12 53/4
diagnoseable [1] 46/8
dictates [2] 27/19 27/20
did [13] 5/24 9/11 22/10
24/14 26/24 31/4 31/24
32/1 32/25 34/10 41/11
44/1 45/20
didn't [11] 14/4 22/24
26/12 33/23 36/12 41/9
43/5 44/2 45/16 47/4 56/1
die [1] 53/19
different [10] 6/4 20/12
20/24 23/14 23/15 25/4
29/20 48/13 54/7 54/8
difficult [2] 28/18 28/20
difficulty [5] 3/21 32/16

32/19 40/11 53/3
directed [2] 6/22 8/16
directly [2] 23/12 56/4
disclosure [2] 17/7 17/9
discovery [1] 43/19
discussing [1] 56/10
discussion [1] 21/20
disfavored [1] 50/11
disorder [1] 35/1
disrespect [2] 39/2 39/3
district [11] 1/1 1/1 8/17
8/18 11/16 11/16 29/9
38/15 58/7 59/6 59/6
dive [2] 25/25 42/5
diving [1] 29/18
DIVISION [1] 1/2
do [25] 9/18 10/5 14/8
14/9 14/12 16/3 17/22
18/18 27/6 29/10 30/10
30/15 33/13 35/25 36/1
36/24 41/8 41/9 42/5 42/5
43/6 43/25 45/7 52/24 59/6
docket [3] 4/3 13/5 58/8
documents [1] 29/13
Doe [5] 31/18 32/15 38/1
41/4 51/17
does [7] 4/12 4/14 15/4
15/18 17/11 30/9 49/6
doesn't [6] 15/7 15/25
23/21 27/11 28/24 35/14
doing [3] 23/3 25/18 26/23
don't [20] 4/3 15/15 16/2
24/9 28/24 31/13 35/11
39/18 40/2 41/10 45/9
45/16 46/13 48/11 48/12
52/7 53/16 55/3 57/24 58/5
done [14] 26/12 26/22
27/1 27/6 29/7 31/11 38/21
39/1 40/18 42/10 44/2 44/3
44/5 44/5
door [2] 24/18 53/18
dot [1] 19/13
doubt [1] 33/11
down [4] 3/11 3/20 11/8
28/22
Dr. [1] 42/10
Dr. Oakley's [1] 42/10
drafting [1] 24/5
driver [1] 30/25
drove [1] 24/9
drug [1] 49/22
Due [1] 17/1
during [6] 9/15 12/1 24/22
26/10 26/23 46/10

## E

each [2] 31/17 55/3
early [3] 21/8 38/22 42/24
Eastern [2] 8/18 29/9
edge [1] 24/9
effect [2] 17/12 42/9
eggs [1] 48/18
either [1] 38/1
electronic [9] 6/5 8/22
8/23 9/13 22/4 30/13 45/2
45/3 51/6
else [3] 22/10 37/21 58/11
elsewhere [1] 8/19
email [8] 7/6 7/17 7/18 8/2
21/17 22/5 51/9 56/7
emails [1] 22/13
embarrassing [1] 23/13

emergency [7] 7/4 11/19
11/21 12/25 24/3 43/24
56/1
emotional [1] 25/8
employ [2] 9/22 10/3
employee [1] 7/5
employment [1] 49/21
enabled [3] 25/6 27/5 53/6
encouraging [1] 27/17
end [3] 5/10 6/15 7/12
ended [1] 41/12
enforcement [11] 7/4 7/6
7/8 21/6 21/17 21/23 25/22
39/23 46/4 51/18 53/14
engage [2] 8/24 47/12
engaged [1] 23/1
engaging [1] 27/13
enlist [1] 46/4
enough [5] 25/24 42/6
56/2
ensure [1] 28/1
entitled [5] 1/8 9/25 24/12
33/24 59/9
entry [2] 10/23 16/22
enumerated [2] 15/6
15/12
escalated [1] 46/2
especially [1] 47/14
ESQUIRE [3] 1/12 1/12
1/14
essentially [9] 2/7 4/20
4/25 9/2 15/8 19/16 49/12
51/13 55/4
evaluate [1] 54/6
evaluated [4] 46/9 46/11
46/17 47/13
evaluation [5] 36/1 36/1
46/19 46/22 47/8
evaluations [1] 46/13
even [9] 6/17 21/5 21/12
22/23 23/16 26/25 35/7
35/11 45/5
ever [2] 33/20 44/17
everything [2] 28/19 44/5
evidence [32] 12/19 15/4
15/21 19/21 19/23 20/15
22/21 24/15 28/7 34/20
40/25 43/4 43/16 43/17
43/19 48/20 49/18 51/2
51/5 51/8 51/16 51/17
51/20 51/23 51/24 53/12
53/20 55/16 56/8 56/13
56/18 56/19
evident [1] 54/9
ex [1] 23/17
ex-boyfriend [1] 23/17
exactly [1] 36/2
example [2] 15/13 49/17
examples [1] 48/15
except [3] 37/19 48/23
55/2
exchange [1] 22/18
excuse [2] 21/24 57/2
execute [1] 22/21
executed [1] 21/24
expect [2] 35/9 45/24
experience [2] 30/2 36/24
explained [2] 18/16 31/8
explosion [1] 47/14
expressed [1] 44/23
extended [1] 8/12
extensive [1] 29/10

extent [2] 37/15 41/24
extraordinarily [1] 39/5

## F

facility [2] 8/24 45/3
facing [1] 44/15
fact [12] 23/1 25/3 36/18
42/24 45/1 46/10 48/23
50/23 52/16 53/20 54/15
58/1
factors [14] 11/25 19/25
37/10 38/4 38/21 42/7
43/17 48/18 48/21 49/11
49/13 52/4 54/13 56/17
facts [2] 26/6 46/20
failed [1] 55/17
false [2] 48/10 53/18
falsely [2] 7/4 46/2
familiar [1] 12/25
families [2] 23/12 44/21
family [9] 5/11 6/15 21/4
25/24 41/24 42/16 48/16
49/20 49/21
far [3] 16/21 23/16 36/11
farther [1] 40/17
fear [1] 9/1
February [3] 5/16 5/22
5/22
February 14 [1] 5/16
federal [14] 1/24 4/6 9/3
9/4 10/15 12/4 17/2 20/25
44/13 46/11 47/2 47/6
49/15 59/17
feelings [1] 25/1
felony [1] 20/24
felt [1] 24/12
female [1] 5/1
few [4] 10/20 12/9 15/23
30/14
fides [3] 34/24 35/4 47/7
fight [3] 8/11 24/17 24/21
figure [2] 47/9 47/11
figured [1] 47/4
file [2] 51/19 57/22
filed [9] 11/5 11/10 11/19
12/24 13/7 13/14 14/7 58/1
58/8
filing [2] 48/8 55/25
find [6] 27/4 37/5 45/6
45/18 45/21 56/13
finding [2] 56/15 56/16
findings [1] 54/15
finds [1] 50/4
fine [2] 16/2 28/22
finished [1] 45/17
firearm [1] 15/14
first [14] 3/22 4/5 4/9 4/21
8/16 9/7 14/17 14/18 16/13
17/4 21/13 34/1 42/15 48/1
five [11] 16/3 16/6 16/6
16/7 33/5 33/6 37/9 49/4
54/25 55/5 55/7
five-minute [1] 16/7
five-year [1] 55/7
fixation [1] 52/6
fixed [1] 35/11
flew [1] 36/22
flight [8] 15/5 15/22 28/2
29/3 38/10 52/23 55/19
56/15
Floor [1] 1/25
flown [1] 30/7

## F

flying [2] 34/22 57/18
focus [2] 29/4 53/1
folks [1] 33/4
follow [2] 6/24 26/8
followed [1] 21/8
followers [1] 25/17
following [3] 22/11 29/11 49/13
foregoing [1] 59/7
foreign [1] 8/24
forever [1] 37/16
formal [2] 10/22 16/22
formally [2] 17/20 17/23
format [1] 59/10
former [2] 29/8 52/16
forth [8] 11/25 24/2 36/20 37/18 43/7 43/17 48/24 54/11
forward [1] 15/4
found [7] 3/19 22/12 23/16 24/4 26/2 31/5 56/9
four [8] 3/23 3/24 4/21 11/1 16/22 20/23 33/6 55/15
four-count [3] 3/23 3/24 4/21
Fourth [4] 57/14 57/25 58/6 58/9
frankly [2] 3/19 20/15
fraud [1] 9/15
French [1] 4/16
fresh [1] 15/20
friend [6] 5/10 5/25 23/22 23/24 31/20 38/17
front [2] 57/25 58/6
full [3] 18/5 30/21 53/14
funny [6] 6/21 43/1 46/1
further [10] 5/20 7/1 7/13 21/16 42/13 44/24 46/2 57/4 57/6 57/8
furtherance [2] 15/14 24/25
Furthermore [2] 8/14 56/20

## G

gained [2] 7/16 8/1
gaining [1] 7/14
gate [1] 15/20
gather [1] 10/17
gave [1] 11/11
generally [1] 50/10
genuinely [2] 21/10 45/25
get [21] 21/11 24/24 27/4 27/9 33/5 35/14 37/6 37/13 37/17 37/18 37/25 39/22 42/1 42/10 42/11 45/7 46/4 46/12 47/4 48/12 53/18
getting [7] 7/12 22/13 32/17 32/20 34/5 45/3 56/5
gifts [1] 24/1
girl [6] 23/21 23/21 24/6 26/14 43/25 46/5
give [9] 14/2 14/9 26/7 28/21 32/3 34/16 35/18 45/5 55/8
given [7] 12/16 12/21 20/15 26/17 35/15 36/7 36/18
gives [2] 29/22 37/24

## 

glad [4] 16/17 20/2 28/10 42/13
global [1] 24/22
go [13] 3/18 4/2 4/5 4/9 4/17 16/18 21/12 23/3 29/1 32/7 32/8 47/4 47/22
goes [2] 30/15 36/25
going [39] 5/13 6/17 6/21 6/21 7/25 10/19 14/16 21/10 21/11 23/16 26/8 27/17 33/1 34/8 34/9 35/17 36/3 36/6 36/23 37/7 37/25 41/13 41/25 42/1 42/5 42/6 42/11 42/25 43/2 45/6 45/25 46/1 46/12 47/11 49/1 49/1 49/2 56/3 57/17
gone [2] 18/24 18/25
good [14] 2/25 3/4 3/14 3/16 13/20 14/6 30/5 30/5 35/24 37/7 38/17 40/16 58/6 58/14
got [6] 21/6 35/10 36/22 36/24 37/19 43/3
government [34] 11/19 12/19 13/1 14/17 14/24 15/21 19/16 19/20 20/6 20/10 27/11 27/21 34/24 38/4 40/6 40/23 40/24 41/6 44/13 46/19 47/8 47/9 47/15 47/19 48/9 48/18 50/21 54/18 55/18 55/22 56/18 57/5 57/7 57/18
Government's [9] 20/14 20/19 21/16 24/3 29/17 34/20 36/19 53/6 55/16
grand [3] 10/9 12/5 43/9
granted [1] 11/22
gravely [1] 46/6
gravity [1] 33/8
great [5] 28/23 39/13 52/2 52/21 53/11
greatest [1] 29/22
group [1] 48/14
guided [2] 49/10 49/11
guilty [7] 10/23 11/1 11/5 16/22 19/7 19/8 48/25 52/9
guy [1] 42/23
guy's [1] 33/5

## H

hac [1] 9/25
hacked [1] 25/15
hacking [2] 23/9 44/25
had [41] 4/2 4/4 4/8 5/13 7/22 10/17 11/17 16/10 21/12 22/9 23/2 25/14 26/14 29/10 29/12 32/16 32/19 32/25 34/5 34/16 36/13 37/5 37/23 38/12 38/13 38/18 40/24 41/23 43/15 43/18 44/17 45/11 45/18 45/18 45/22 45/22 45/23 46/10 46/13 48/5 52/9
hand [1] 18/3
hands [2] 27/4 58/15
handwriting [1] 57/2
happen [5] 27/5 45/24 53/16 58/6 58/7
happened [1] 45/22
happy [1] 32/11
harass [5] 6/18 8/7 8/19

## 

8/21 22/7
harassing [7] 6/6 6/10 7/23 23/11 23/13 42/24 45/12
harassment [9] 5/3 5/7 5/24 6/16 7/13 8/5 21/12 25/10 52/1
hard [1] 37/7
hardworking [1] 30/24
has [56] 3/22 4/4 6/17 8/9 9/24 10/19 13/1 16/20 17/18 18/12 18/15 20/10 20/11 20/22 20/23 21/16 23/21 23/25 24/15 24/23 25/5 26/2 26/5 26/7 27/6 30/10 34/14 34/16 35/2 38/5 40/11 40/24 43/9 44/8 44/16 44/17 44/20 45/7 46/7 50/11 50/18 50/21 51/4 51/10 51/13 51/23 52/9 52/17 52/19 52/20 53/7 53/7 55/17 56/1 56/8 56/18
have [97]
haven't [5] 2/17 31/16 33/2 37/4 43/18
having [6] 10/20 23/7 23/7 43/25 54/14 58/7
he [99]
he's [30] 2/24 9/25 25/11 26/8 27/18 29/13 30/3 30/18 34/8 34/9 36/6 36/11 36/16 37/14 37/15 37/17 37/19 37/23 37/23 42/4 44/17 45/6 45/7 45/18 47/1 49/3 52/15 52/22 55/5 58/15
health [13] 25/8 27/17 34/15 34/16 34/17 34/22 35/15 40/7 40/10 46/9 46/23 52/17 52/21
hear [11] 14/17 16/17 17/19 20/2 28/10 31/14 32/11 38/24 41/20 42/13 57/11
heard [5] 33/20 39/14 43/9 43/9 47/21
hearing [16] 1/8 2/6 3/21 10/8 10/19 11/21 11/24 12/7 12/9 26/11 38/14 38/17 50/3 54/14 56/14 58/19
hearings [1] 33/22
held [4] 27/22 47/19 50/3 59/9
hell [4] 23/16 33/14 44/20 44/21
help [2] 37/17 37/18
her [41] 5/13 5/18 5/20 5/24 5/25 6/11 6/18 6/22 7/22 8/1 22/7 22/8 22/8 22/8 22/9 23/7 23/9 23/9 23/13 23/16 24/1 24/13 31/7 31/7 31/11 31/12 33/7 38/13 38/17 38/18 40/21 41/4 43/4 43/15 44/2 44/10 45/14 45/18 45/23 46/2 51/15
here [90]
hereby [2] 56/24 59/6
high [2] 4/16 23/17
highly [1] 35/24

## 

highly-trained [1] 35/24
him [44] 8/11 14/9 18/22 21/1 21/2 21/5 23/4 23/21 24/9 24/20 24/20 24/21 25/23 25/24 26/5 26/6 26/22 28/2 30/8 30/9 30/9 30/12 30/18 30/21 31/1 32/25 32/25 34/16 35/17 37/7 37/13 37/18 42/4 42/6 44/9 45/1 45/6 45/14 45/15 45/19 46/3 46/14 52/21 55/8
himself [4] 24/24 25/6 43/22 44/18
hire [2] 22/24 29/8
hired [1] 47/7
his [70]
history [12] 11/9 13/23 19/18 27/12 27/14 37/19 44/25 48/22 49/19 49/21 49/22 52/2
hoax [1] 7/9
Hollander [1] 38/19
home [10] 7/7 7/8 21/25 27/2 30/12 39/8 39/23 40/1 42/18 49/7
Homeland [1] 1/16 2/15 2/21
Honor [63]
HONORABLE [2] 1/9 58/17
horrible [1] 41/8
hot [2] 28/25 33/21
hotel [2] 24/15
hour [1] 19/1
house [9] 21/2 21/18 22/9 30/12 30/17 31/12 32/23 35/8 56/3
housekeeping [2] 16/19 16/25
how [7] 22/20 25/21 34/22 39/19 40/10 43/1 52/20
However [1] 22/3
hundreds [1] 20/24
hurry [1] 53/16
hurt [2] 25/1 53/18
husband [2] 33/7 33/17

## I

I'd [3] 26/2 32/5 42/13
I'll [10] 16/6 16/17 17/12 28/10 28/21 32/11 38/24 54/17 56/16 56/23
I'm [46] 3/23 4/10 4/13 12/25 13/5 14/16 14/18 15/8 15/18 16/21 17/10 17/19 20/2 21/11 23/23 28/14 28/16 28/25 31/22 32/18 33/23 34/4 34/11 35/5 35/17 36/5 38/9 39/15 39/16 40/20 41/9 41/13 41/16 41/17 41/22 42/3 42/25 45/25 52/11 54/2 55/9 56/12 56/12 56/15 56/16 57/11
I's [1] 19/14
I've [11] 11/14 12/6 12/23 28/13 44/5 44/5 46/10 51/19 52/14 54/18 56/24
idea [1] 35/15
identification [1] 9/12
identified [2] 5/1 21/21

## 

identify [2] 2/9 2/12
identity [5] 4/23 9/6 9/17 54/21 55/1
ignore [2] 50/22 50/23
II [4] 8/15 9/2 19/5 19/8
III [6] 9/6 9/7 9/8 19/5 19/9 20/16
Illinois [3] 21/22 21/25 56/9
images [6] 6/9 7/21 7/23 23/10 23/11 25/16
immediately [4] 22/11 34/7 36/1 42/23
implement [2] 38/7 42/8
implications [1] 53/15
important [5] 21/7 23/18 28/5 45/9 47/16
impose [1] 45/6
imposition [1] 46/15
impression [1] 41/19
imprisonment [6] 15/1 54/22 54/25 55/5 55/10 55/12
impulses [1] 44/18
inability [1] 44/18
incarceration [1] 20/17
incentive [2] 20/18 44/16
incidents [1] 53/19
include [2] 20/17 23/16
included [2] 6/7 8/9
including [7] 15/13 20/16 43/13 49/14 49/19 53/4 53/16
incorporating [1] 29/15
indeed [1] 10/18
indicate [1] 36/13
indicated [2] 34/5 35/5
indicates [1] 51/16
indications [1] 51/13
indicia [1] 34/21
indicted [1] 3/22
indictment [18] 2/5 3/23 3/24 4/10 4/21 10/9 11/14 12/6 18/12 18/15 18/24 19/5 19/9 21/14 21/23 22/25 25/12 43/8
individual [4] 21/21 25/14 49/18 50/2
individuals [1] 25/13
information [10] 22/4 24/16 29/18 33/2 41/14 43/7 43/8 43/8 50/21 56/13
initial [9] 2/4 4/2 4/4 4/6 10/21 10/22 11/5 11/13 41/19
initially [1] 43/24
injure [2] 8/19 8/21
injury [1] 9/1
innocence [1] 51/4
instability [1] 46/8
Instagram [4] 5/17 6/24 32/1 45/12
instances [1] 20/24
intended [1] 39/2
intending [1] 8/7
intent [2] 8/19 8/20
intentioned [1] 50/23
interactive [1] 8/22
interim [1] 12/5
international [1] 37/23
internet [11] 22/19 25/6 27/5 27/9 31/25 39/6 39/21

**I**

**internet...** [4] 41/15 48/13 53/6 53/10
**internet-enabled** [3] 25/6 27/5 53/6
**interrupt** [1] 31/14
**interstate** [3] 8/23 8/24
**intimidate** [3] 8/7 8/20 8/21
**inure** [1] 47/24
**investigate** [1] 7/6
**investigation** [6] 2/16 13/22 21/16 22/1 45/17 55/25
**Investigations** [2] 1/16 2/22
**involved** [5] 7/14 21/6 28/3 48/14 53/14
**involvement** [1] 25/22
**involves** [2] 14/25 49/16
**iPhone** [1] 51/20
**iPhones** [3] 35/8 35/10 53/4
**is** [211]
**ISABELLE** [2] 1/12 3/4
**isn't** [2] 28/1 34/25
**issue** [5] 17/5 20/20 34/22 38/11 43/6
**issued** [2] 21/23 21/25
**issues** [3] 38/23 40/7 40/10
**issuing** [1] 43/10
**it** [86]
**it's** [49] 2/18 3/9 3/10 3/13 3/23 4/25 6/21 7/1 13/21 17/15 18/23 20/22 21/7 22/23 23/18 23/20 24/10 25/20 27/16 28/2 28/18 31/11 34/15 34/25 36/15 36/19 37/15 38/16 39/6 39/9 39/20 40/3 41/7 41/16 41/19 43/1 43/9 44/3 44/9 44/10 44/12 44/13 45/9 46/1 47/12 48/6 51/9 52/22 52/24
**its** [4] 17/9 26/7 26/25 48/18
**IV** [6] 9/6 9/8 9/9 19/5 19/9 20/16

**J**

**jail** [3] 33/5 36/8 49/7
**Jane** [5] 31/18 32/15 38/1 41/4 51/17
**Jersey** [1] 36/14
**job** [2] 36/25 42/2
**join** [1] 32/10
**joined** [1] 2/14
**Jones** [5] 1/16 2/15 2/21 2/23 2/25
**Jordan** [1] 47/1
**judge** [43] 10/25 11/15 13/16 15/17 18/2 26/11 28/12 28/23 29/21 31/16 32/3 32/13 33/1 33/10 33/22 34/18 35/20 36/17 37/15 38/13 38/15 38/15 38/17 38/19 39/14 40/16 40/24 41/16 41/21 47/1 47/21 47/23 47/23 48/5 48/5 48/10 48/17 48/24

**K**

**keep** [4] 3/18 14/10 57/16 58/8
**keeping** [1] 49/3
**kid** [1] 45/8
**kidding** [1] 45/25
**kill** [2] 8/19 8/20
**killed** [2] 7/19 8/20
**kind** [7] 31/10 34/15 35/17 41/1 41/20 52/25 53/19
**kinds** [1] 30/1
**knew** [4] 26/21 31/17 31/18 42/23
**knock** [2] 44/11 44/13
**knocked** [1] 24/18
**know** [41] 4/8 12/23 21/7 21/15 22/15 22/19 23/2 23/21 24/7 24/9 24/11 24/20 26/9 26/18 26/22 27/8 27/17 28/18 28/24 32/5 33/24 39/25 40/2 40/4 41/10 41/12 42/25 43/1 43/16 43/23 43/25 44/2 44/4 46/8 46/13 46/21 47/11 48/11 52/7 53/16 53/17
**knowing** [1] 43/24
**known** [1] 51/9
**knows** [3] 22/19 44/15 53/14

**L**

**language** [1] 54/5
**large** [1] 23/10
**lash** [1] 41/17
**last** [7] 3/14 5/22 17/1 31/24 34/4 38/19 53/22
**late** [1] 42/17
**later** [1] 42/17
**Laughter** [1] 40/19
**law** [16] 7/3 7/6 7/8 9/4 9/4 13/9 17/11 21/6 21/17 21/23 25/22 27/19 39/23 46/4 51/18 53/14
**makes** [2] 48/9 48/19
**making** [2] 24/11 51/14
**lawful** [2] 9/12 9/14
**lawyers** [1] 58/15
**lead** [1] 28/21
**least** [9] 3/14 6/3 15/7 24/16 26/20 33/6 41/5 46/20 49/7
**leave** [1] 31/12
**legal** [1] 55/8
**less** [1] 58/7
**let** [7] 3/18 4/8 4/17 12/15 16/18 54/16 58/5
**level** [1] 58/7
**levels** [1] 54/7
**licensed** [1] 47/7
**life** [4] 23/16 24/13 37/24 44/3
**lightly** [1] 53/13
**like** [13] 13/14 17/20 22/6 26/18 28/11 32/5 32/8 32/22 36/15 37/15 46/3 46/20 55/23
**likelihood** [1] 46/7
**likely** [2] 27/18 27/18
**limited** [2] 15/2 24/14
**line** [2] 2/15 2/24 23/6 35/11
**lines** [2] 22/13
**linked** [1] 22/13
**links** [1] 5/18
**listed** [1] 21/3
**literally** [1] 52/7
**little** [1] 16/18 28/22
**live** [1] 24/19
**lived** [2] 20/10 20/11
**lives** [1] 20/12
**living** [1] 32/23
**local** [1] 21/25 42/18 42/21
**location** [1] 24/16
**lockup** [1] 19/1
**log** [1] 51/21
**log-in** [1] 51/21
**logging** [1] 43/15
**Lombard** [1] 1/25
**long** [5] 5/2 27/13 52/1 53/9 53/9
**longer** [1] 20/12
**look** [3] 37/7 48/21 49/2
**looking** [3] 24/17 48/4 48/18
**lot** [1] 41/23
**love** [4] 5/18 24/1 24/7 26/5
**lucky** [1] 40/20

**M**

**Madam** [4] 11/4 13/11 17/17 57/1
**made** [13] 6/22 8/12 22/7 23/11 23/22 26/12 29/15 32/15 33/1 41/21 45/13 48/1 51/23
**Magistrate** [2] 11/15 38/13
**mainly** [1] 40/2
**maintained** [1] 5/12
**make** [21] 9/21 10/2 10/11 10/11 10/14 23/16 24/13 27/18 30/9 30/25 31/9 33/4 35/7 35/14 36/22 36/23 36/25 54/15 57/16 58/7 58/8
**male** [4] 5/5 5/25 5/25 8/5
**malleable** [2] 37/15 37/17
**man** [2] 29/13 37/6 49/3
**mandatory** [2] 20/17 55/2
**many** [1] 26/19
**March** [1] 38/20
**Margaret** [2] 31/3 35/4
**marshal** [2] 46/14 46/15
**marshals** [1] 12/2
**Martin** [1] 1/18 14/4 40/22
**MARYLAND** [18] 1/1 1/5 1/25 5/2 5/6 5/9 7/5 8/18 17/8 17/10 24/17 24/25 37/24 39/10 39/10 40/5 52/25 59/6
**mask** [5] 3/20 28/18 28/20 28/22 32/7
**matter** [23] 1/8 2/2 3/18 4/6 10/18 15/22 16/13 16/21 16/25 17/11 19/17 25/5 27/23 29/11 38/12 38/18 39/22 45/5 52/17 53/10 53/20 57/5 59/9
**matters** [1] 16/19
**maximum** [5] 14/25 54/22 55/4 55/8 55/9
**may** [17] 1/5 2/11 3/17 8/15 10/12 10/14 14/15 14/16 14/24 15/14 15/15 26/9 35/1 35/1 37/6 44/19 57/8 59/13
**May 9** [1] 8/15
**me** [29] 3/8 3/18 4/9 4/17 11/21 12/16 14/2 14/9 16/18 17/20 19/13 21/24 30/14 31/8 32/3 32/7 33/18 33/20 33/23 38/15 38/24 39/1 39/13 53/21 53/24 54/6 54/9 54/16 58/1 58/5
**mean** [6] 32/21 35/10 35/14 39/11 39/21 43/16
**meaning** [2] 7/3 51/17
**means** [4] 9/12 23/12 26/23 42/6
**meant** [1] 14/3
**measures** [1] 47/18
**media** [5] 6/5 7/15 8/6 8/13 51/12
**meet** [1] 42/7
**member** [1] 9/24
**members** [1] 6/15
**memorandum** [7] 12/24 13/2 13/2 13/6 13/9 13/21 16/11
**mental** [19] 23/20 25/7 27/17 34/14 34/16 34/17 34/22 35/15 40/7 40/10 46/8 46/9 46/23 49/20 52/3 52/17 52/20 52/21 56/20
**mentioned** [2] 32/25 41/6
**message** [4] 5/13 24/5 42/25 56/5
**messages** [10] 6/8 6/8 22/16 23/25 25/16 42/24 43/1 45/11 51/11 56/9
**messaging** [1] 21/19
**met** [2] 23/21 24/7
**microphone** [2] 28/14 28/24
**middle** [1] 5/9 23/22
**midst** [1] 24/22 47/5
**might** [2] 26/10 27/10
**Milleson** [2] 47/1 47/2
**mind** [4] 15/25 24/7 26/15 33/11
**mine** [1] 14/9
**mini** [2] 22/6 35/8
**minimum** [1] 39/1
**minor** [1] 49/16
**minute** [1] 11/8 16/7
**minutes** [6] 12/9 15/23 16/3 16/6 16/7 32/3
**Miranda** [2] 10/13 43/23
**mischief** [2] 37/20 48/23
**missed** [1] 13/4
**mistake** [1] 23/23
**mistaken** [1] 3/23
**misunderstanding** [1] 26/13
**mitigate** [1] 54/3
**mitigated** [1] 47/17
**mix** [1] 40/4
**moment** [3] 3/17 30/15 38/25
**moments** [1] 10/20
**money** [2] 23/7 23/8
**monitor** [1] 31/1
**monitoring** [1] 42/9
**month** [1] 5/2
**month-long** [1] 5/2
**months** [12] 20/20 20/23 21/9 21/12 23/3 24/2 24/5 24/8 33/5 49/4
**months'** [1] 27/13
**more** [12] 6/4 15/1 16/18 28/5 31/14 40/18 41/3 41/4 44/8 44/16 45/5 47/10
**morning** [8] 2/4 2/25 3/4 3/14 3/16 14/6 30/5 30/6
**Moses** [3] 11/15 26/11 48/5
**most** [1] 26/18
**mother** [4] 21/4 26/11 29/12 44/12
**motion** [11] 2/7 11/19 11/21 11/22 12/25 13/8 13/9 14/12 24/3 43/24 56/1
**motivation** [1] 27/4
**move** [1] 14/24
**moving** [2] 29/15 46/19
**Mr** [7] 1/18 17/25 28/13 28/15 28/15 55/19 57/8
**Mr.** [71]
**Mr. and** [3] 32/14 35/9 58/13
**Mr. Byerley** [4] 29/10 34/11 52/10 52/11
**Mr. Milleson** [1] 47/2
**Mr. Mullin** [20] 3/10 4/10 9/23 9/24 10/24 12/13 13/15 13/23 16/23 17/15 18/20 28/10 31/13 32/11 33/19 38/8 42/12 47/22 49/9 51/10
**Mr. Mullin's** [3] 12/23 13/2 13/5
**Mr. Myers** [20] 2/17 3/24 4/4 12/11 12/17 13/3 14/13 15/24 16/10 17/13 20/2 27/24 38/25 42/13 47/20 47/24 49/6 54/23 57/5 57/16
**Mr. Singh** [18] 3/3 3/5 3/15 4/1 4/17 9/19 11/2

## M

Mr. Singh... **[11]** 11/8
13/24 14/15 18/3 18/8 19/4
29/7 30/3 30/25 31/9 36/7
Mr. Singh's **[1]** 22/3
Mr. William **[1]** 29/9
Mrs **[1]** 1/18
Mrs. **[3]** 32/14 35/9 58/13
Mrs. Singh **[3]** 32/14 35/9
58/13
Ms **[1]** 4/11
Ms. **[25]** 3/8 4/10 9/23 9/23
13/13 13/18 14/4 14/10
15/16 18/1 18/20 19/13
28/10 29/12 30/24 31/4
32/10 33/6 35/4 35/21
40/13 40/22 41/4 49/5 57/3
Ms. Carter **[7]** 13/13 13/18
14/10 15/16 18/1 19/13
57/3
Ms. Jane **[1]** 41/4
Ms. Margaret **[1]** 35/4
Ms. Martin **[1]** 40/22
Ms. Nikki **[1]** 14/4
Ms. Oakley's **[1]** 35/21
Ms. Raquin **[9]** 3/8 4/10
9/23 9/23 18/20 28/10
32/10 40/13 49/5
Ms. Singh **[4]** 29/12 30/24
31/4 33/6
much **[23]** 4/16 15/16
16/12 19/12 20/25 27/25
28/1 28/5 28/9 34/25 40/22
42/12 43/5 44/8 46/22
47/20 49/9 52/22 55/18
57/3 57/7 57/21 58/12
MULLIN **[24]** 1/12 3/2 3/10
4/10 9/23 9/24 10/24 12/13
13/15 13/23 16/23 17/15
18/20 28/10 28/13 31/13
32/11 33/19 38/8 42/12
47/22 49/9 51/10 57/8
Mullin's **[3]** 12/23 13/2
13/5
murder **[2]** 22/18 22/24
must **[4]** 17/11 19/25
49/10 49/10
my **[30]** 3/20 4/3 4/16 12/1
13/4 14/1 14/18 18/24 29/3
29/11 29/22 30/1 31/4
31/16 33/11 33/24 35/6
35/19 36/24 37/4 38/17
41/4 41/8 41/23 47/25 48/5
48/8 48/15 57/2 58/4
MYERS **[24]** 1/14 2/14
2/17 3/24 4/4 12/11 12/17
13/3 14/13 15/24 16/10
17/13 20/2 27/24 28/15
38/25 42/13 47/20 47/24
49/6 54/23 55/19 57/5
57/16

## N

name **[7]** 4/11 4/18 18/5
22/17 34/11 51/14 52/12
names **[1]** 24/20
nature **[12]** 4/9 9/18 12/6
12/21 14/19 25/19 27/10
49/13 49/25 50/20 51/25
54/6
Neck **[3]** 36/8 36/12 36/16

need **[8]** 4/2 16/3 28/14
31/6 33/12 37/6 39/1 40/8
needed **[1]** 37/17
needs **[3]** 27/22 33/15
44/13
Neither **[1]** 14/21
never **[6]** 6/21 13/1 21/10
23/21 24/6 42/25 45/25
57/19
New **[18]** 3/11 3/12 8/18
11/12 11/16 20/12 24/24
26/11 26/25 31/23 32/21
32/22 34/3 37/24 43/10
48/2 48/3 52/25
news **[1]** 25/13
next **[1]** 5/21
nice **[9]** 2/17 2/18 3/6 3/9
3/9 3/10 3/13 4/15 14/5
Nikki **[2]** 1/18 14/4
nine **[2]** 13/21 14/11
nine-page **[2]** 13/21 14/11
no **[39]** 1/3 6/10 6/16 6/17
12/20 15/9 15/19 17/14
19/21 19/23 20/12 21/11
25/5 26/15 26/23 27/25
30/16 30/17 30/18 33/11
34/14 35/8 35/15 36/10
36/25 37/19 37/23 39/1
39/2 42/17 45/5 45/20 50/4
50/10 50/18 52/17 55/21
58/4 58/12
nonappearance **[3]** 20/7
20/9 20/14
none **[2]** 25/24 48/22
North **[1]** 46/15
NORTHERN **[1]** 1/2 36/8
36/12 36/16
not **[84]**
note **[8]** 14/3 15/8 21/7
26/2 34/10 38/12 40/14
54/17
noted **[9]** 8/14 35/7 46/7
50/12 50/17 51/10 52/4
54/18 54/18
nother **[1]** 57/6
nothing **[5]** 33/13 37/21
37/21 41/23 42/5
notice **[1]** 53/8
noticed **[1]** 28/13
November **[5]** 5/14 6/4 8/1
8/15 8/16
November 24 **[2]** 6/4 8/15
November 8 **[1]** 8/16
novo **[2]** 1/12 11/14
now **[26]** 11/7 11/8 14/13
14/16 17/11 17/12 20/2
21/15 23/23 26/9 33/2
33/20 37/18 41/17 42/11
44/8 44/9 44/16 45/16
46/16 46/21 47/10 47/14
50/3 53/5 53/24
number **[31]** 2/3 7/11 8/5
8/7 8/10 8/11 8/17 11/17
12/24 13/7 13/10 20/11
21/3 23/10 24/19 25/4
29/13 30/2 30/16 30/19
32/16 32/20 35/20 36/4
36/5 41/23 41/24 43/2 48/7
48/8 51/9
numbers **[2]** 43/3 51/6
numerous **[4]** 8/6 18/24
27/13 36/21

nurse **[1]** 30/24
NYPD **[2]** 45/12 45/13

## O

Oakley **[1]** 31/5
Oakley's **[2]** 35/21 42/10
objection **[1]** 17/13
obligations **[2]** 17/7 17/9
obsession **[3]** 24/2 24/8
32/2
obsessive **[12]** 31/25
34/21 35/1 35/17 39/5 39/6
39/6 39/19 39/21 40/7 52/6
56/21
obsessiveness **[2]** 34/23
39/12
obtained **[2]** 7/21 22/16
obviously **[5]** 16/20 40/8
43/9 45/8 48/2
October **[2]** 17/1 45/10
off **[6]** 4/16 24/9 26/25
30/15 44/11 44/13
offense **[7]** 14/25 27/10
49/14 49/15 49/24 51/8
51/25
offenses **[6]** 12/16 15/6
15/12 20/25 27/13 54/23
office **[6]** 17/10 31/7 31/11
35/21 42/10 47/6
officer **[3]** 26/2 29/9 52/16
officers **[7]** 7/8 21/23 39/8
40/1
Official **[3]** 1/24 59/1 59/17
often **[1]** 50/19
Oh **[1]** 13/20
okay **[4]** 17/22 19/3 30/16
57/15
Oklahoma **[3]** 36/11 36/13
36/15
old **[5]** 20/11 27/4 37/14
37/17 37/20
older **[3]** 5/10 23/22 31/20
once **[2]** 24/4 33/7
one **[42]** 5/1 5/6 5/9 5/17
5/19 6/6 6/10 6/14 6/17
6/24 6/25 7/11 7/21 7/23
8/6 8/16 8/21 9/7 9/8 9/14
21/3 22/9 22/9 22/13 25/16
25/17 25/18 30/16 31/20
32/16 32/20 35/20 36/4
36/25 41/5 41/23 43/2 48/7
45/14 48/7 48/19 50/5 53/5
one's **[6]** 7/2 7/7 7/14 7/17
42/18 51/14
ones **[2]** 38/21 44/21
online **[5]** 5/13 5/18 6/8
7/23 23/24 24/14 25/2
25/20 41/3
only **[3]** 18/25 21/14 39/5
opinion **[5]** 10/13 17/8
38/12 38/18 50/13
opportunity **[5]** 10/17
16/10 29/12 35/18 40/25
opposed **[1]** 47/11
opposite **[1]** 41/11
oral **[1]** 17/5
orchestrated **[1]** 5/23
order **[16]** 6/18 11/20 17/6
17/12 17/12 21/11 25/23
27/9 27/20 42/8 45/20
47/12 50/7 54/17 56/24
56/25

ordered **[1]** 11/17 54/12
ordering **[2]** 17/8 41/12
other **[19]** 6/8 6/22 8/12
8/24 14/25 16/25 22/25
25/12 29/5 31/17 46/5
46/24 48/14 50/6 53/2 55/2
55/3 56/15 56/16
others **[3]** 22/7 28/25 35/4
otherwise **[1]** 36/8
our **[10]** 29/15 29/16 41/7
42/22 42/7 43/23 45/10
46/15 55/25 56/8
ours **[1]** 36/19
out **[22]** 5/3 5/23 8/10
14/11 14/1 14/11 23/19 25/4
29/9 29/23 35/22 36/5 37/5
37/13 40/18 41/6 41/20
44/17 47/4 47/9 47/11 48/4
49/7
outrageous **[1]** 48/10
outweighs **[1]** 27/8
over **[16]** 3/18 4/2 4/5 4/9
4/17 5/21 14/4 16/18 18/24
18/25 25/1 30/21 33/15
36/8 40/23 51/15
overloaded **[1]** 46/16
overt **[1]** 20/24
overwhelming **[1]** 43/20
51/20 56/19
owe **[1]** 33/19
own **[3]** 9/22 14/10 31/5

## P

p.m **[1]** 58/19
package **[1]** 29/22
page **[6]** 13/21 13/24
14/11 14/12 43/23 59/9
Page 14 **[1]** 43/23
paid **[1]** 26/19
pandemic **[4]** 24/22 38/23
46/10 47/5
Paper **[3]** 12/24 13/7 13/10
papers **[2]** 29/15 45/10
parents **[2]** 26/5 26/6
26/20 26/21 30/4 30/4
30/21 30/23 31/15 31/24
34/25 39/3 41/9 42/19
44/10 44/10 44/11 44/19
45/19 50/23 53/8 53/21
parents' **[4]** 7/2 7/7 21/2
30/12
parole **[1]** 49/25
part **[5]** 22/1 25/12 29/15
40/4 42/2
particularly **[1]** 47/16
party **[2]** 33/10 56/3
passed **[1]** 17/1
past **[6]** 36/17 45/7 49/21
52/4 52/20 53/11
PATRICK **[2]** 1/12 3/2
pattern **[1]** 21/9
paying **[2]** 4/16 21/21
payment **[1]** 56/10
penalties **[2]** 19/1 44/16
penalty **[1]** 20/16
pending **[5]** 2/8 13/8 13/10
27/22 47/19
people **[15]** 3/20 22/9 23/6
25/1 26/7 30/24 31/17
35/11 35/25 35/25 36/22
47/13 53/16 53/18 53/19
people's **[2]** 25/17 45/2

perceived **[1]** 6/1
perfect **[1]** 16/4
period **[3]** 7/25 12/5 52/1
permitted **[1]** 31/9
perpetuate **[1]** 35/17
persistence **[1]** 25/21
persistent **[1]** 21/9
person **[14]** 2/18 9/13
15/11 23/21 24/17 28/11
35/22 40/17 42/18 49/25
50/1 50/6 50/6 50/8
person's **[1]** 49/20
personal **[3]** 7/21 13/23
23/10
persons **[3]** 53/2 56/15
56/16
persuasion **[1]** 15/3
phone **[16]** 2/14 6/5 21/20
22/6 22/12 22/22 24/4
24/16 26/22 26/24 30/20
30/22 43/14 51/6 56/6 56/9
phones **[1]** 53/4
phrase **[3]** 40/2 51/17 53/7
physical **[2]** 49/20 53/1
physically **[1]** 25/4
picked **[1]** 28/15
picking **[3]** 28/15 28/16
28/25
pictures **[2]** 43/13 43/13
pizza **[2]** 41/10 41/12
place **[3]** 8/20 37/21 49/8
placed **[3]** 8/25 18/21 30/1
places **[1]** 15/2
plain **[1]** 54/5
Plaintiff **[2]** 1/3 1/11
plan **[7]** 36/20 38/6 38/7
38/9 48/4 48/24 48/24
plans **[1]** 31/14
platform **[1]** 22/20
play **[1]** 38/22
player **[1]** 41/5
players **[1]** 48/14
plea **[6]** 10/23 11/1 11/5
16/22 19/6 19/8
pleaded **[1]** 6/15
pleading **[1]** 25/23
please **[7]** 2/10 2/12 4/1
17/24 18/3 18/5 21/10
pled **[1]** 46/25
plus **[2]** 55/5 55/13
point **[8]** 12/11 12/13
13/15 23/6 34/8 35/6 57/4
57/9
police **[9]** 21/2 39/7 40/1
42/18 42/20 44/11 45/19
46/3 53/18
pose **[2]** 15/4 56/21
posed **[2]** 20/20 50/2
poses **[2]** 23/20 25/7
56/14
position **[3]** 41/7 41/17
57/25
possess **[1]** 9/11
possessed **[1]** 9/13
possible **[2]** 7/7 45/24
post **[1]** 25/16
posted **[1]** 24/19
posting **[1]** 6/20
postings **[2]** 6/8 8/12
posts **[3]** 6/7 22/7 23/11
posture **[1]** 12/10
potential **[2]** 19/1 20/16

**P**

preliminary [1]  10/7
prepare [1]  49/6
preponderance [3]  12/19
 15/21 19/20
prescribed [1]  15/1
present [2]  1/15 17/5
presented [3]  29/21 36/2
 54/1
presumably [3]  36/12 46/3
 46/4
presumed [1]  12/19
presumption [12]  12/18
 12/20 14/20 14/22 15/2
 15/19 16/14 38/5 48/9 51/4
 55/17 55/21
pretrial [9]  10/10 14/24
 26/1 36/2 36/24 37/2 47/16
 50/10 50/14
pretty [3]  39/20 39/21 48/4
preventive [1]  50/16
previously [3]  50/11 50/17
 52/18
primary [1]  5/2 51/11
 55/20
print [4]  13/13 13/18 14/11
 14/11
prior [5]  27/12 34/14 37/19
 48/22 50/18
private [3]  5/17 6/7 10/1
pro [1]  9/25
probable [2]  10/9 55/16
probably [3]  33/20 44/4
probation [5]  1/18 26/2
 29/8 49/25 52/16
problem [3]  33/13 34/2
 34/19
procedural [3]  11/9 12/10
 19/18
Procedure [3]  4/6 10/16
 17/3
procedures [1]  19/19
proceed [6]  11/7 11/8
 12/15 19/15 47/10 58/14
proceeded [1]  6/13
proceedings [5]  17/3 29/4
 48/1 48/3 59/8
proceeds [1]  33/16
process [3]  17/1 22/2 47/5
procured [1]  34/11
produced [1]  56/14
production [1]  15/3
profane [6]  6/22 43/1
professed [1]  5/18
professing [1]  24/1
professional [2]  47/7 59/4
proffer [5]  34/23 48/19
 51/8 53/12 55/16
proffered [5]  39/9 50/21
 52/24 53/7 56/18
proffers [1]  40/6
program [2]  37/12 40/9
projected [1]  34/15
pronouncing [4]  4/11 4/18
 34/11 52/11
proof [2]  12/18 47/13
proposed [2]  31/4 47/18
proposing [1]  26/1
pros [1]  29/19
prosecution [2]  17/6 17/7
prosecutor [1]  17/4

protected [1]  44/22
protection [1]  27/9
Protections [1]  17/1
protective [2]  25/23 47/18
provide [2]  13/17 20/17
provided [2]  5/18 18/12
providers [1]  22/4
providing [1]  15/21
proving [1]  19/20
provoke [1]  21/17
provoking [1]  46/3
psychologist [4]  31/2 31/5
 36/23 39/2
psychologists [1]  35/24
public [8]  2/15 2/24 6/7
 22/7 26/4 27/7 47/2 47/6
pull [5]  3/20 24/21 28/14
 28/21 32/7
punitive [1]  50/16
purposes [2]  25/15 42/3
pursuant [2]  2/6 10/15
 11/22 12/7 16/25 50/8
 54/12 59/7
put [6]  6/15 41/14 42/4
 44/19 44/20 53/8
puts [1]  48/18

**Q**

qualified [2]  39/19 52/15
question [9]  16/13 19/2
 30/16 34/1 42/16 44/20
 50/10 50/15 54/8
questioning [2]  34/4 35/5
questions [2]  33/21 47/3
quickly [2]  13/19 55/23
quite [8]  3/19 40/15 46/15
 51/5 51/20 51/24 52/6 58/5
quote [3]  7/12 7/12 38/17
quoted [1]  50/17

**R**

racial [1]  22/8
railroad [1]  58/3
raise [1]  18/3
raised [2]  42/16 47/17
rape [1]  22/18
RAQUIN [13]  1/12 3/5 3/8
 4/10 4/11 4/16 9/23 9/23
 18/20 28/10 32/10 40/13
 49/5
rather [2]  34/10 49/3
RDB [2]  1/4 2/3
RDB-21-0116 [1]  2/3
read [5]  12/23 12/25 18/15
 52/14 58/8
ready [2]  12/15 19/15
real [2]  25/19 44/2
reality [1]  34/6
realize [1]  14/4
really [1]  13/1 21/13
 28/16 37/25 38/20 39/4
 39/12 39/19 40/11 46/1
 48/11
Realtime [1]  59/5
reason [2]  28/13 34/1
reasonable [1]  9/1
reasonably [5]  15/10
 19/22 26/4 28/1 50/5
reasons [5]  11/24 27/21
 37/9 47/15 54/11
Rebekah [1]  31/5
rebut [1]  55/17

rebuttable [7]  12/17 12/20
 14/20 14/22 15/19 16/14
 38/5
rebuttal [2]  15/9 38/25
received [6]  6/24 7/5 22/5
receiving [1]  36/10
recently [5]  19/1 20/12
 35/22 46/10 46/25
recess [4]  16/5 16/7 16/8
 16/9
recognize [1]  40/8
recollection [1]  32/24
record [12]  2/9 11/25
 17/21 17/23 18/6 38/13
 49/22 52/11 53/7 53/23
 54/11 55/24
recorded [1]  11/4
reference [1]  48/1
referenced [1]  51/7
reflect [1]  38/13
reflected [1]  17/24
reflects [1]  52/17
Reform [7]  12/8 14/23
 19/19 49/10 49/12 50/15
 52/5
Registered [1]  59/4
regular [1]  43/2
regulate [1]  27/18
regulations [1]  59/10
rejected [1]  5/19 25/2
rejection [2]  24/2 24/8
related [2]  24/10 49/22
relating [1]  9/8 9/9
relation [1]  9/15
relationship [2]  26/14
 26/15
release [10]  2/8 10/10
 11/17 11/20 13/8 13/10
 20/21 26/1 50/2 56/21
released [2]  31/9 54/1
releasing [1]  47/25
relentless [2]  5/23 23/5
relief [1]  44/23
relocated [1]  5/11
remain [1]  12/3
remanded [1]  12/2
reminding [1]  19/13
rendering [1]  53/5
report [10]  7/4 13/22
 13/24 13/25 29/14 34/10
 45/13 52/10 52/14 52/15
reported [1]  1/23 42/23
 59/8
reporter [6]  1/24 25/13
 59/1 59/4 59/5 59/17
reporting [1]  46/2
represent [1]  10/4
represented [1]  47/7
request [2]  6/25 23/24
requested [1]  10/19
require [1]  35/13
required [4]  10/11 15/11
 20/18 50/6
requires [2]  49/12 54/6
research [1]  31/5
reside [1]  20/13
residence [3]  7/2 7/4
 24/18
resident [2]  5/1 5/6
resources [2]  46/13 49/21
respect [10]  2/5 15/12
 15/13 17/2 19/17 19/19

40/12 41/1 53/1 58/15
respond [2]  35/18 58/9
responded [5]  7/8 13/1
 21/2 42/18 57/19
response [2]  21/17 57/22
responsibility [2]  33/9
 42/7
responsible [1]  42/24
restrain [1]  44/18
restrictions [1]  30/1
result [2]  7/20 24/12
retained [6]  9/23 10/1
 10/18 13/22 36/13 58/15
retaliate [1]  44/9
retaliation [3]  44/4 44/6
 44/8
return [2]  21/23 27/2
returned [2]  2/5 12/5
reverting [1]  48/17
review [9]  4/3 12/1 14/19
 15/23 16/11 20/4 22/3
 29/13 52/9
reviewed [3]  24/4 51/19
 55/25
reviewing [1]  22/2
revocation [1]  11/20
RICHARD [1]  1/9
right [27]  3/12 9/22 10/7
 10/10 14/4 14/12 14/15
 16/5 18/3 19/12 24/6 30/15
 32/8 32/13 36/3 37/1
 39/17 40/15 41/11 41/17
 46/18 47/22 55/4 56/12
 57/13 58/5 58/11
rights [1]  29/19
rise [4]  11/12 16/8 54/7
 58/17
risk [15]  15/5 15/22 20/7
 20/9 25/19 27/7 27/7 28/2
 29/3 38/1 38/9 52/22 55/18
 56/14 56/15
rival [1]  6/1
romantic [1]  5/19 6/1
 26/14
Ronda [3]  1/24 59/4 59/16
routinely [1]  17/11
RPR [2]  1/24 59/16
Rule [2]  4/5 10/15 17/2
Rules [3]  4/6 10/15 17/3
run [1]  58/3

**S**

safety [9]  15/11 19/24
 25/8 26/4 28/2 28/4 50/6
 53/2 56/15
said [8]  10/14 21/8 22/13
 26/8 38/20 44/5 45/23 56/2
Salerno [1]  50/12
same [3]  5/25 41/12 57/24
sanctions [1]  54/8
satisfactory [1]  17/15
satisfied [3]  18/21 38/9
 54/2
saw [2]  21/1 22/15
say [2]  24/6 39/19
saying [5]  26/21 29/20
 42/3 48/12 56/5
scary [2]  41/19 41/20
scheduled [1]  17/4
schedules [1]  30/23
school [5]  4/16 5/9 5/11
 23/17 23/22

scope [2]  23/14 50/22
screen [2]  22/17 51/22
sealed [1]  11/10
search [1]  21/24 21/24
 22/21 43/10
searches [1]  40/25
seated [5]  2/11 3/17 14/15
 14/16 19/14
second [5]  8/17 14/16
 32/8 32/24 40/14
secondly [1]  9/7
secure [1]  10/10
Security [3]  1/16 2/16 2/22
see [11]  2/17 2/18 3/9 3/10
 13/11 14/5 25/17 36/2 37/7
 37/25 49/2
seek [3]  6/17 8/10 10/10
seeking [8]  20/6 20/13
 22/17 45/14 45/20 52/25
 54/18 55/18
seem [1]  28/25
seems [2]  38/24 38/25
seen [3]  2/18 23/25 48/15
seized [2]  22/1 43/14
Senate [1]  38/14
send [3]  6/5 22/9 56/5
sending [2]  24/1 39/7
senior [1]  38/15
sense [1]  37/12
sent [8]  21/17 21/18 23/12
 24/1 24/19 51/11 56/7 56/8
sentence [2]  55/2 55/2
sentenced [1]  46/25
series [1]  27/13
serious [3]  9/1 22/20
 25/7 37/22 43/6 44/15
 44/16 46/8 47/3 52/20
 53/21 53/25 54/5
seriously [1]  54/10
seriousness [4]  20/15
 33/8 50/1 54/6
served [1]  45/21
service [5]  8/22 8/22 22/4
 26/25 46/14
services [3]  36/2 36/24
 37/2
sessions [1]  31/12
set [7]  11/24 24/2 36/20
 43/7 43/16 48/24 54/11
setting [1]  11/17
sexual [1]  50/20
shall [4]  15/9 17/5 50/7
 54/12
shared [2]  5/16 7/23
sharing [1]  23/9
she [16]  5/10 6/17 11/17
 21/12 21/12 21/13 23/23
 23/23 26/10 26/12 31/8
 33/7 33/23 42/22 44/4
 45/20
she's [7]  14/11 22/8 26/9
 40/14 40/20 45/19 45/19
shit [1]  45/24
short [1]  36/15
should [8]  21/15 23/3 27/2
 27/14 45/4 45/5 53/8 54/1
show [3]  25/5 36/19 56/9
shown [6]  21/19 24/15
 43/4 44/18 56/1 56/8
shows [4]  21/20 25/21
 45/2 46/7
sic [2]  36/9 44/9

**S**

side [1] 40/23
sign [3] 17/11 17/12 56/23
signed [2] 17/18 56/24
significantly [1] 27/8
signing [1] 54/17
simple [2] 52/16 53/20
since [1] 12/4 29/2 55/25
SINGH [31] 1/4 1/18 2/3
3/3 3/5 3/15 4/1 4/17 9/19
11/2 11/8 13/24 14/15
17/25 18/3 18/7 18/8 19/4
28/15 29/7 29/12 30/3
30/24 30/25 31/4 31/9
32/14 33/6 35/9 36/7 58/13
Singh's [1] 22/3
sir [3] 3/10 4/18 55/11
sister [6] 5/10 21/5 23/22
31/18 31/20 44/12
sit [1] 11/8
sitting [2] 36/8 36/9
situation [4] 31/15 39/25
50/25 53/8
sketching [1] 36/5
slurs [1] 22/8
smallest [1] 53/3
smart [1] 45/8
Snapchat [2] 7/17 9/9
so [59] 4/5 10/21 11/7 12/3
12/7 12/15 15/20 16/17
18/23 19/1 19/25 23/16
24/22 25/10 25/17 25/19
26/20 27/7 27/21 27/24
27/25 28/1 30/3 30/18
31/11 33/7 34/19 34/25
35/13 36/3 36/25 37/9
37/18 37/24 38/3 38/16
40/13 41/16 42/10 44/3
45/4 45/7 46/22 47/5 47/15
48/17 52/19 52/22 53/6
54/2 54/11 55/4 55/7 55/13
55/18 55/21 57/21 58/3
58/15
social [7] 6/4 6/7 6/20 7/14
8/6 8/12 51/12
solution [1] 26/1
some [25] 5/12 5/13 6/20
24/10 26/14 27/16 28/13
31/10 32/16 32/19 34/21
35/11 37/20 40/5 42/24
46/7 47/3 47/12 48/23
50/19 51/10 52/24 52/25
53/15 53/18
someone [12] 7/3 22/10
22/17 22/17 23/4 31/1
35/23 36/7 37/7 37/16
41/11 49/2
something [4] 30/15 46/20
48/6 57/18
somewhat [1] 38/16
son [4] 30/7 31/1 34/5
58/14
soon [3] 27/5 42/10 56/4
sophisticated [1] 45/8
sorry [4] 4/13 17/19 32/18
57/11
sort [9] 15/20 20/19 24/8
25/5 27/16 34/21 42/23
47/12 47/13
Southern [2] 8/18 11/16
speak [5] 3/20 26/10 32/25

speaking [2] 39/16 43/8
Special [2] 1/16 2/15
specific [1] 22/9
specifically [8] 2/7 6/2 7/5
7/15 9/10 20/8 44/23 52/3
spiraled [1] 23/24
spoke [6] 29/11 29/12
31/2 31/7 32/13 35/21
spurred [1] 23/6
stack [1] 55/13
staff [1] 46/16
stalking [3] 45/14 45/14
46/3
stand [3] 4/1 17/24 58/16
start [3] 10/11 15/20 39/22
started [3] 36/14 37/18
45/11
starting [1] 5/22
state [2] 18/5 21/22
stated [2] 44/1 47/24
statement [3] 10/11 10/12
10/14
statements [2] 43/22
56/17
STATES [28] 1/1 1/3 2/3
2/6 2/13 2/14 4/22 4/23 9/5
9/16 9/17 10/13 11/15
11/15 11/23 12/1 17/9
38/19 44/14 47/1 50/8
50/12 54/13 54/20 54/21
57/14 59/5 59/11
station [1] 36/16
status [1] 46/23
statute [5] 37/10 38/3
44/22 48/17 54/5
statutes [1] 14/22
stay [1] 36/12
stays [1] 24/15
stealing [1] 45/2
stenographically [1] 59/8
stenographically-reported
[1] 59/8
step [1] 14/18
still [9] 22/2 23/3 35/13
35/16 37/15 37/17 38/11
40/11 53/5
stolen [1] 43/15
stop [11] 6/21 10/12 21/1
21/2 21/5 21/10 21/10
25/24 34/7 43/1 46/1
stored [1] 7/22
story [2] 5/17 44/7
Street [1] 1/25
streets [1] 34/3
stressed [1] 46/14
strong [6] 51/3 51/5 51/17
51/20 51/25 56/18
structured [1] 54/2
student [3] 5/9 20/11
24/23
students [1] 26/19
study [1] 39/1
stuff [1] 41/1
subject [1] 15/9
submission [1] 29/16
submit [7] 29/22 36/18
36/20 37/9 38/3 41/22 48/8
submitted [5] 15/24 16/11
29/14 38/5 38/9
subscribed [2] 26/19
26/20

subsequently [2] 7/9 7/22
substance [3] 18/16 38/20
49/16
substantive [1] 45/1
sufficiently [1] 47/17
suggest [1] 41/13
suggesting [2] 30/2 30/11
suggestion [2] 35/4 43/5
suggests [1] 56/20
summarized [4] 12/6
12/10 19/18 43/23
summarizes [1] 9/4
summary [4] 34/20 51/23
Support [1] 13/9
Supreme [5] 10/13 50/11
50/13 50/14 50/17
sure [15] 4/10 9/21 10/2
23/23 30/9 30/25 33/5 35/7
35/14 36/22 36/23 36/25
57/16 58/7 58/9
surveillance [2] 8/20
35/14
suspiciously [1] 9/10
swat [5] 22/8 40/1 40/3
51/18 53/15
swatted [5] 7/12 22/14
51/17 53/17 56/6
swatting [18] 7/3 21/14
21/15 22/5 22/11 39/7
39/22 40/2 40/4 41/7 42/17
45/11 46/4 53/11 53/19
56/5 56/7 56/11
sworn [1] 18/4
system [1] 8/23

**T**

T's [1] 19/13
take [15] 14/3 15/15 15/23
16/2 16/5 16/7 17/17 23/23
24/12 30/8 32/5 37/7 43/6
46/14 49/2
taken [2] 53/12 54/10
takes [1] 49/7
taking [3] 26/24 33/9
51/15
talk [3] 32/8 33/22 40/13
talking [3] 23/7 24/1 42/25
target [3] 5/2 5/7 7/2
targeted [1] 8/5
targeting [1] 8/10
team [1] 51/18
teams [3] 40/1 40/3 53/15
technically [1] 45/8
telegram [2] 22/16 22/20
22/22
telemedicine [3] 31/10
35/23 47/14
telephone [6] 1/17 2/23
26/17 26/18 51/9 51/12
telephones [1] 31/3
tell [3] 22/8 30/14 33/4
telling [6] 7/6 39/15 44/11
44/11 44/12 44/12
temerity [1] 45/18
Temple [1] 31/2
ten [2] 55/12 55/13
tend [1] 33/21
term [5] 15/1 41/10 41/11
55/4 55/10
terms [31] 9/17 15/20
16/18 20/9 20/14 20/17
21/19 25/25 28/3 28/6 28/5

34/19 34/22 35/7 36/18
39/6 39/7 39/25 43/10
46/23 48/8 48/17 48/22
51/21 51/24 52/1 52/3
52/20 54/4 54/16 54/22
terrible [1] 41/7
terrific [1] 40/20
terror [1] 24/25
terrorism [2] 41/13 49/15
Texas [12] 5/11 20/13
30/13 31/2 32/23 34/9
36/22 37/2 37/24 39/2
42/19 42/21
text [5] 5/13 6/8 45/11
texted [2] 7/11 45/23
texting [1] 32/1
than [6] 6/4 41/3 41/4
42/17 44/16 49/3
thank [32] 2/11 4/15 14/14
15/15 16/12 17/14 18/1
19/4 19/11 19/12 19/13
20/3 28/9 28/12 28/23 29/2
32/6 32/10 38/8 39/7
42/12 42/15 47/20 47/23
49/9 57/3 57/7 57/12 57/23
58/2 58/12 58/13
that [392]
that's [42] 4/15 12/20
12/22 13/24 14/21 15/15
16/2 16/4 27/5 28/22 30/18
31/10 31/21 33/1 33/21
34/13 35/18 36/3 36/3
36/14 37/4 37/13 39/5 39/7
39/13 39/15 39/5 40/3
40/14 40/22 42/1 42/6
42/22 44/7 46/15 46/18
48/2 48/7 50/8 50/19 53/22
58/5
theft [4] 4/23 9/7 9/17
54/21 55/1
their [14] 25/14 27/4 30/7
30/23 31/1 32/17 32/20
32/24 34/4 34/5 34/9 41/14
44/21 53/18
them [9] 21/5 23/7 32/4
32/8 33/17 43/14 44/24
45/7 45/14
themselves [3] 2/9 2/12
43/12
then [20] 3/1 4/16 5/5 5/10
5/15 6/2 6/23 7/10 7/25
22/10 24/19 29/4 36/15
36/16 37/6 38/19 40/5
43/12 44/5 50/7
theoretical [1] 25/20
there [59] 4/25 5/5 11/10
11/13 12/20 13/7 13/11
15/19 16/14 16/20 16/22
18/25 21/20 26/3 26/15
30/16 30/17 30/18 30/20
30/20 32/9 32/15 32/25
34/14 35/8 35/16 36/15
36/16 36/21 37/12 37/13
38/22 39/11 39/11 40/7
40/14 41/3 41/4 41/6 41/21
47/3 47/10 48/3 48/11 49/2
50/4 50/24 51/6 51/13
52/17 53/12 53/25 54/7
55/16 55/21 56/2 57/4 57/6
57/21
there's [16] 10/8 10/22
13/24 19/25 22/21 24/10

27/16 30/18 30/25 33/11
35/3 38/9 41/5 50/10 51/8
51/16
thereby [1] 38/15
these [31] 6/7 7/20 7/23
12/16 12/21 14/19 21/9
23/6 23/11 24/13 25/1
25/10 26/6 26/13 26/21
30/1 31/17 33/4 35/24
35/24 35/25 40/10 40/18
41/20 44/17 50/19 51/10
53/19 54/24 56/16 56/19
they [42] 9/2 15/6 15/23
25/4 26/24 26/25 27/1
29/18 30/2 30/7 30/14
30/15 32/1 32/14 32/16
32/19 32/25 32/25 33/8
33/9 33/9 33/11 33/12
33/15 33/17 34/2 34/5 34/6
34/6 37/1 41/12 41/13
43/18 44/23 45/16 45/17
45/17 45/21 52/2 55/13
56/10 58/1
they're [6] 23/6 29/20
30/24 44/21 53/17 57/17
they've [4] 33/14 33/14
35/10 40/18
thing [9] 7/9 33/3 33/10
37/20 37/25 41/8 41/8
42/11 48/23
things [11] 14/25 25/18
26/13 26/22 27/6 30/3
32/15 35/20 45/22 47/24
53/16
think [39] 3/8 10/21 15/15
19/15 20/19 21/7 22/23
23/3 23/14 23/18 23/19
25/3 25/25 26/17 27/7 27/8
27/12 27/16 28/4 33/19
37/20 39/18 42/6 43/7
43/20 44/25 45/4 45/9 45/9
45/17 45/25 46/7 46/18
47/12 47/23 52/6 53/6
53/17 57/17
thinks [1] 47/16
third [1] 33/10
third-party [1] 33/10
this [132]
Thomas [3] 1/24 59/4
59/16
thorough [3] 29/13 34/10
52/10
thoroughly [1] 52/9
those [14] 14/20 20/17
23/11 25/17 27/21 30/14
37/9 44/18 45/22 47/15
52/4 54/11 54/15 54/22
though [2] 22/23 26/25
thought [3] 31/6 48/3 48/4
thoughtful [1] 40/9
thoughts [1] 33/24
thousands [1] 43/12
threat [5] 15/22 25/22
25/22 50/15 53/25
threatening [1] 51/10
threats [3] 8/10 8/11 25/3
through [13] 6/24 16/4 21/8
24/15 25/6 29/25 33/14
33/14 44/19 44/20 44/21
45/16 47/4
throughout [1] 55/22
thrust [1] 27/24

**T**

thumb [1] 34/9
thus [1] 36/11
tie [2] 56/4 56/6
tied [1] 51/9
tier [1] 29/5
ties [1] 49/21
TikTak [2] 8/2 9/9
time [16] 10/12 10/23 14/3
21/13 26/23 31/23 32/16
32/19 35/16 36/13 45/22
49/24 53/9 53/9 57/10
57/12
times [2] 18/25 33/6
Title [4] 12/9 20/1 49/11
52/5
today [8] 26/10 30/4 38/16
41/6 51/3 51/23 54/12
56/23
told [5] 21/2 21/8 31/8
41/22 45/19
too [1] 29/19
took [2] 21/11 37/21
top [1] 43/21
trained [1] 35/24
transcript [2] 59/8 59/9
transfer [2] 9/11 9/12
travel [1] 37/23
traveled [2] 39/3 52/25
treatment [4] 34/15 36/10
47/12 52/18
tremendous [1] 36/25
trial [9] 2/8 13/8 13/10
27/22 36/9 36/9 43/18
47/19 50/8
trouble [1] 34/5
truck [1] 30/25
true [1] 59/7
trust [2] 26/7 27/3
trying [11] 14/18 15/8
15/19 24/5 31/22 33/22
35/7 40/14 47/11 51/3 55/9
twice [2] 21/16 24/24
Twitter [2] 25/14 51/15
two [27] 5/5 5/25 6/5 8/7
8/10 8/11 8/17 8/21 21/3
24/17 24/19 25/1 25/11
25/12 30/19 32/3 35/20
36/5 36/22 41/24 45/1 48/8
55/1 55/3 55/5 55/7 55/13
two-year [1] 55/1
type [3] 6/20 34/2 54/9

**U**

U.S [6] 12/2 17/2 17/8
17/10 50/12 52/16
U.S.C [1] 59/7
ugly [1] 22/8
ultimately [2] 11/12 50/14
53/24
unabated [3] 51/1 52/19
53/24
unable [2] 44/24 45/20
unauthorized [3] 7/14
7/16 8/1
under [27] 8/20 9/4 10/12
11/25 12/9 14/23 15/8 17/7
19/19 20/1 26/6 30/12 34/9
38/3 38/4 42/7 43/17 44/22
49/10 49/11 52/4 52/5 52/5
54/13 54/14 54/19 54/24
underlying [1] 24/10

understand [14] 9/18 9/21
10/2 10/5 18/18 31/19 33/8
33/11 33/15 34/8 34/15
35/3 41/18 43/18
understanding [3] 29/17
31/17 37/4
understands [5] 18/21
20/10 27/11 33/7 33/7
unemployed [1] 24/23
unequivocally [1] 5/17
unfortunately [1] 50/19
UNITED [28] 1/1 1/3 2/2
2/6 2/13 2/14 4/22 4/23 9/5
9/15 9/16 10/13 11/14
11/15 11/23 12/1 17/9
38/18 44/14 47/1 50/8
50/12 54/13 54/20 54/20
57/14 59/5 59/11
unknown [1] 52/19
unpack [1] 41/17
until [1] 53/23
up [18] 3/19 7/25 13/18
22/5 23/2 24/6 24/21 28/15
28/15 28/16 28/25 31/6
31/22 32/7 41/12 54/25
57/16 58/8
upon [1] 29/4 29/18 34/23
37/10 50/14 52/22 55/15
urge [1] 57/22
us [2] 37/24 38/6
use [7] 9/11 15/13 30/17
30/21 30/21 31/25 53/10
used [12] 6/4 6/9 8/21
9/13 10/15 22/22 24/19
25/15 26/17 35/22 51/7
56/4
using [2] 22/17 23/15
Usually [1] 40/17
utilize [1] 30/18

**V**

vacuum [3] 34/24 39/12
40/12
Valentine's [1] 5/16
various [1] 51/21
vehicles [2] 35/13 35/16
verify [1] 15/19
verses [1] 44/14
very [35] 4/15 4/15 12/25
13/18 15/16 16/2 16/12
19/12 28/9 28/15 28/16
29/13 29/13 35/24 39/24
40/6 40/9 40/20 42/12 45/8
47/20 48/3 49/9 51/2 51/2
52/9 52/10 54/9 54/10
55/23 57/3 57/7 57/21
58/12 58/14
via [1] 1/17
viable [1] 48/24
vice [1] 9/25
victim [51] 4/25 5/1 5/5
5/6 5/9 5/16 5/19 5/25 6/6
6/10 6/14 6/16 6/24 7/2 7/7
7/11 7/14 7/17 7/21 7/23
8/5 8/6 8/7 8/10 8/11 8/16
8/17 8/21 9/7 9/8 9/14 21/1
21/3 21/3 21/8 22/16 22/19
23/18 24/17 24/18 25/16
25/16 25/18 25/23 26/21
31/20 42/18 45/13 48/9
49/16 51/14
victim's [4] 21/18 23/12

43/13 56/3
victimized [2] 41/14 48/16
victims [12] 8/25 20/8
23/6 25/9 25/10 25/11 27/8
28/3 41/25 44/12 44/17
44/20
video [1] 24/19
view [8] 12/11 12/13 13/15
28/2 28/6 29/20 57/4 57/9
violation [6] 4/22 4/23 9/3
9/4 9/15 9/16
violence [3] 8/11 15/14
49/15
Virginia [3] 25/13 29/9
35/22
visited [1] 39/9
voices [1] 3/19
void [1] 39/4
vs [1] 1/4

**W**

wait [1] 36/16
waiting [1] 36/9
waived [1] 43/22
want [17] 4/5 9/21 10/2
14/9 15/23 17/22 26/10
28/22 31/13 31/14 32/7
33/23 40/13 47/4 48/22
57/17 57/24
wanted [2] 33/22 47/3
wants [1] 55/24
warrant [2] 21/24 21/24
warrants [2] 22/21 43/11
was [70]
wasn't [2] 24/13 32/22
watch [1] 30/9
watching [1] 33/12
wave [1] 45/24
way [10] 3/22 10/9 27/4
30/4 31/11 33/13 36/5 45/6
45/24 58/3
ways [2] 23/15 25/4
we [50] 2/4 3/18 12/7 12/8
12/17 15/20 16/2 19/15
19/18 22/24 24/4 24/4
29/10 29/14 29/20 29/21
29/22 31/6 31/8 31/9 33/2
33/21 34/16 35/3 36/20
37/2 37/6 37/10 37/17 38/6
38/11 39/1 40/5 40/6 40/22
42/4 42/4 42/5 42/9 42/11
46/14 46/20 47/3 47/4
48/10 48/11 48/24 52/7
56/3 56/6
we'll [6] 11/7 11/8 14/12
16/5 16/7 17/23
we're [26] 10/19 12/15
22/2 22/20 27/24 30/2
30/11 34/21 34/24 36/7
36/23 39/4 39/12 40/11
40/16 41/2 41/2 42/1 42/10
43/18 48/4 49/1 49/5 51/3
52/7 52/7
we've [9] 10/21 11/4 16/21
18/25 29/7 36/24 38/5
48/15 50/3
wear [1] 30/13
week [1] 33/6
weekly [1] 42/9
weeks [2] 21/22 36/17
weigh [1] 43/17
weight [9] 20/15 28/7

43/16 43/19 48/20 49/18
51/2 51/4 56/19
welcome [1] 3/9 3/10
15/17 18/2
well [36] 2/6 2/19 2/25 3/5
3/7 4/15 4/22 8/8 8/15
13/18 13/25 17/24 20/7
22/3 25/8 25/13 27/20
28/15 28/15 28/16 29/12
29/15 34/8 37/6 39/25
40/23 41/14 41/15 42/12
47/8 48/4 50/17 50/23
51/22 53/14 56/17
well-being [1] 25/8
well-intentioned [1] 50/23
well-thought-out [1] 48/4
went [3] 21/13 24/18 36/15
were [27] 23/11 25/4
26/22 27/1 31/6 31/15
31/24 32/14 34/2 34/6 34/6
38/21 41/10 41/13 41/21
41/24 44/1 46/10 47/3 47/7
51/11 53/8 53/21 55/8
56/10 57/25 58/1
what [46] 14/7 15/23 18/8
18/10 19/5 21/8 22/6 23/2
24/14 26/8 29/7 29/19
29/20 30/2 30/9 30/11 31/6
31/8 31/22 33/1 33/24 35/1
35/15 35/18 35/20 36/3
41/9 41/10 41/22 41/25
42/3 42/5 42/6 42/7 44/4
45/6 46/23 48/4 48/11
48/12 51/19 51/22 52/7
53/4 53/15 54/22
what's [5] 37/7 37/25
47/11 49/2 58/8
whatever [2] 27/9 29/18
when [27] 3/20 5/8 17/4
21/10 24/4 27/14 31/14
31/24 31/24 32/1 32/24
33/22 35/21 37/20 38/18
38/20 39/22 39/25 41/20
42/17 43/14 43/22 48/13
48/23 53/15 57/25 58/1
whenever [1] 34/6
where [15] 3/18 16/14
20/13 22/17 23/6 24/18
25/5 30/1 38/4 38/9 41/3
46/17 46/24 48/15
wherever [1] 36/9
wherewithal [1] 24/24
whether [6] 23/4 23/20
25/6 49/14 49/24 52/7
which [23] 5/17 6/10 9/3
9/22 11/16 14/25 20/16
22/1 22/6 29/5 29/14 39/12
40/8 41/1 41/7 43/12 45/20
46/16 47/1 48/22 50/3 50/5
51/24
whichever [1] 28/11
while [13] 2/18 29/17
29/18 29/23 30/3 30/17
33/15 36/15 44/19 46/11
47/13 49/5 49/7
who [29] 2/20 5/2 5/5 5/6
6/1 22/10 22/19 23/18
23/22 24/23 26/5 26/5 26/7
26/14 30/14 31/7 35/22
35/23 36/7 36/22 36/24
37/6 38/13 39/3 44/21
46/10 47/2 52/10 53/16

who's [3] 5/1 21/21 31/5
whole [2] 7/9 53/24
whom [2] 37/3 46/25
whose [3] 31/6 37/16 47/7
why [8] 16/2 28/24 33/21
39/15 39/15 40/3 40/22
53/17
wife [1] 33/17
will [25] 2/9 2/12 11/4 12/8
14/11 15/10 16/22 17/17
17/24 17/24 19/22 19/23
20/1 27/3 27/25 28/23 29/3
29/4 29/23 30/8 32/10
36/21 37/13 38/13 58/14
William [3] 1/16 2/21 29/9
wire [1] 9/15
wishes [1] 23/23
within [1] 14/19
without [6] 9/12 9/14 38/1
44/20 50/15 54/8
words [1] 24/6
work [6] 30/2 30/23 36/22
40/18 48/6 48/25
works [4] 36/21 36/23
world [5] 23/10 35/11 41/2
41/16 48/13
worse [2] 24/13 45/24
would [43] 9/16 10/17
12/2 12/3 13/13 14/2 15/25
17/20 20/13 27/17 28/11
30/13 30/13 30/16 30/17
30/20 30/20 30/21 31/9
31/12 33/9 33/12 33/18
35/9 35/16 35/23 35/25
36/8 36/12 36/20 37/3
37/14 38/6 40/10 42/8
47/19 50/2 50/5 54/1 55/23
56/21 57/21 58/6
wouldn't [3] 31/11 44/1
46/19
write [2] 40/14 57/17
writing [1] 7/11
written [2] 17/5 56/17
wrong [1] 30/15
wrongs [1] 29/19
wrote [1] 52/10

**Y**

yeah [1] 17/22
year [12] 5/11 5/22 11/11
12/7 18/10 20/11 27/4
31/24 34/4 53/22 55/1 55/7
years [10] 15/17 34/14
37/17 37/20 54/25 55/5
55/5 55/12 55/13 55/15
yes [31] 3/6 4/12 4/19 9/20
10/6 11/3 12/12 12/14 13/4
13/7 13/12 16/12 17/16
18/14 18/17 18/19 19/2
19/10 20/5 20/5 28/4 28/8
30/5 32/11 33/25 34/13
37/4 55/11 57/20 57/23
58/10
yesterday [1] 38/14
yet [6] 4/4 26/23 43/18
48/11 50/25 52/18
York [18] 3/11 3/12 8/18
11/12 11/16 20/12 24/24
26/11 26/25 31/23 32/21
32/22 34/3 37/24 43/10
48/2 48/3 52/25

## Y

**you [219]**
**you'd [1]** 32/8
**you'll [2]** 4/1 11/7
**you're [11]** 3/11 6/21 7/12
 10/10 15/17 18/2 22/13
 33/24 37/16 39/25 56/5
**you've [7]** 3/8 4/20 10/1
 33/20 35/7 38/8 40/9
**young [2]** 37/6 49/3
**younger [2]** 40/17 40/22
**your [104]**

## Z

**ZACHARY [2]** 1/14 2/13